**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **AL M WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-154-SDJ-KPJ** |
| | § | |
| **LADERA APARTMENTS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS' ORIGINAL ANSWER TO PLAINTIFF'S FIRST VERIFIED COMPLAINT AND REQUEST FOR EMERGENCY INJUNCTION

Pursuant to the February 25, 2021, Order entered by this Honorable Court, Defendants Ladera Apartments, "Ms. Judy[1]," and Daniel Paz (collectively "Defendants") file their Original Answer to Plaintiff's First Verified Compliant and Request for Emergency Injunction filed by Plaintiff Al M Williams (the "Plaintiff"), and would respectfully show the Court the following:

### I. Admissions and Denials

1. By way of initial response and in accordance with the Federal Rules of Civil Procedure, Defendants make the following admissions and denials:

2. Defendants deny the allegations in paragraph 1.

3. Defendants deny the allegations in paragraph 2.

4. Defendants deny the allegations in paragraph 3.

5. Defendants deny the allegations in paragraph 4.

---

[1] Upon information and belief, "Ms. Judy" is a reference to Judith McMakin, the Vice President of Willmax Capital Management, the property management company for Ladera Apartments.

6. Defendants deny the allegations in paragraph 5.

7. Defendants deny the allegations in paragraph 6.

8. Defendants deny the allegations in paragraph 7.

9. Defendants deny the allegations in paragraph 8.

10. Defendants deny the allegations in paragraph 9.

11. Defendants deny the allegations in paragraph 10.

12. Defendants deny the allegations in paragraph 11.

13. Defendants deny the allegations in paragraph 12.

14. Defendants deny the allegations in paragraph 13.

15. Defendants deny the allegations in paragraph 14.

16. Defendants deny the allegations in paragraph 15.

17. Defendants deny the allegations in paragraph 16.

18. Defendants deny the allegations in paragraph 17.

19. Defendants deny the allegations in paragraph 18.

20. Defendants deny the allegations in paragraph 19.

## II. Special Defenses

21. By way of further answer, Defendants assert the following:

22. Plaintiff lacks standing to bring this action. As set forth in the Verified Complaint, Plaintiff purports to be a tenant at Ladera Apartments. The truth, however, he is not. The tenant is Carolyn Williams, and she is the subject of the pending eviction litigation and judgment that Plaintiff is seeking to circumvent and ultimately enjoin from enforcement in this federal action.

23. By way of background, Plaintiff is not named as a tenant or an occupant for 3930 Accent Drive, Apartment No. 2411, Dallas, Texas 75287 (the "Leased Premises"). <u>See Defendants' Exhibit 1, the Apartment Lease Contract</u>. The only person named as a tenant or occupant is Carolyn Williams. Carolyn Williams fell behind on her rent and Ladera Apartments initiated a state court eviction proceeding against her before the onset of the Covid-19 pandemic.

24. Filed initially with the justice court, the court of original jurisdiction for eviction matters, the eviction litigation has proceeded from the justice court to the Denton County Court at Law No. 2 to the Texas Second Court of Appeals and back to the Denton County Court at Law No. 2, where it currently stands. The pertinent highlights of these proceedings[2] are as follows:

    a.   January 16, 2020    Eviction filed against Carolyn Williams in Denton County Justice of the Peace, Precinct 6 (the "Justice Court"). Assigned Case No. E20-0302J6 and styled <u>Ladera v. Carolyn Williams</u>.

    b.   February 11, 2020    Justice Court enters judgement in favor of Ladera Apartments.

    c.   February 12, 2020    Carolyn Williams appeals the February 11, 2020, judgement from the Justice Court.

    d.   February 20, 2020    Appeal transferred to Denton County Court at Law No. 2.

---

[2] For a complete listing of all the numerous pleadings filed in the state court eviction proceedings, see the docket's sheets attached as Defendants' Exhibit No. 2.

<table>
<tr><td></td><td></td><td>(the "County Court at Law") Assigned Cause No. CV-2020-00600JP.</td></tr>
<tr><td>e.</td><td>March 5, 2020</td><td>Following a trial <em>de novo</em> that Carolyn Williams did not appear, the County Court at Law entered a Final Judgement in favor of Ladera Apartments.</td></tr>
<tr><td>f.</td><td>April 27, 2020</td><td>Carolyn Williams appeals March 5, 2020, Final Judgement. Appeal is assigned to the Texas Second Court of Appeals and given Appellate Case No. 02-20-00127-CV.</td></tr>
<tr><td>g.</td><td>January 21, 2021</td><td>Texas Second Court of Appeals dismisses appeal.</td></tr>
<tr><td>h.</td><td>January 25, 2021</td><td>Ladera Apartments requests writ of possession.</td></tr>
<tr><td>i.</td><td>January 30, 2020</td><td>Carolyn Williams provides CDC Declaration</td></tr>
<tr><td>j.</td><td>February 2, 2021</td><td>Ladera Apartments files Motion to Execute Writ of Possession which had been requested before receipt of the CDC Declaration. Pursuant to the Emergency Orders issued by the Supreme Court of Texas such challenges to a CDC Declaration are permitted. The Motion to Execute Writ of Possession is still pending.</td></tr>
</table>

25. Throughout the state court eviction litigation, the party who has filed the repeated appeals and numerous court documents has been Carolyn Williams, not Plaintiff. Plaintiff cannot have standing when he is not a party to the Apartment Lease Contract or the state court eviction litigation.

26. Additionally, Plaintiff seeks relief in part, if not completely, based on the CDC Eviction Moratorium. Plaintiff, however, cannot seek such relief based on the opinion of <u>Trekel v. Centers for Disease Control and Prevention</u>, No. 6:20-cv-00564, United States Court for the Eastern District of Texas, February 25, 2021. In <u>Trekel</u>, the Court held that the "federal government's Article I power to regulate interstate commerce and enact laws necessary and proper to that end <u>does not include the power to impose the challenged eviction moratorium [the CDC Eviction Moratorium]</u>." (emphasis added). Because the federal government lacked the power to enact the CDC Eviction Moratorium, Plaintiff has no basis for a cause of action or relief based on an unconstitutional moratorium. Nor does Plaintiff have

27. Additionally, this Honorable Court lacks jurisdiction to decide the issue of possession. The issue of the right to possession of real property is exclusive within the jurisdiction of the state court. Special rules and procedures govern such proceedings, including procedures to handle eviction cases in which the protections of the CDC Eviction Moratorium have been enacted. <u>See Supreme Court of Texas 34th Emergency Order</u>.

28. Assuming *arguendo* that there is standing, a basis for relief, and jurisdiction, Plaintiff does not qualify for the protections of the CDC Eviction Moratorium. A person qualifies under the CDC Eviction Moratorium if the person submitting the declaration is a covered person and that covered person makes certain declarations. Plaintiff is not a covered person. As noted prior, he is not a tenant, lessee, or resident of the Leased Premises. Moreover, he did not submit the CDC Declaration. The CDC Declaration was submitted by Carolyn Williams. <u>See Defendants' Exhibit 3, the CDC Declaration emailed to Judith McMakin</u>

from Carolyn Williams.    Because he did not submit a CDC Declaration, he is not

protected.

29. Moreover, if he was a covered person and submitted a CDC Declaration, Plaintiff would

not qualify for its protections.   Plaintiff would not qualify because he would not be

homeless if evicted.  Plaintiff has represented in other judicial proceedings that he has a

home separate and apart from the Leased Premises.

### III. Affirmative Defenses

30. By way of further answer, Defendant Daniel Paz asserts the affirmative defense of attorney

immunity.

WHEREFORE, PREMISES CONSIDERED, Defendants request that all relief requested

by Plaintiff be denied and that this matter be dismissed with prejudice.

Respectfully submitted,

THE PAZ LAW FIRM, PLLC

By:    */s/ Daniel Paz*
       Daniel Paz
       State Bar No. 24027722
       daniel@thepazlawfirm.com

14330 Midway Rd., Suite 214
Dallas, Texas 75244
Telephone: (214) 812-9061
Facsimile: (214) 812-9420
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, a true and correct copy of the foregoing was emailed and hand-delivered to:

Al M Williams
3930 Accent Drive
Apartment No. 2411
Dallas, Texas 75287
**legalaccessaw@gmail.com**

*/s/ Daniel Paz*
Daniel Paz



TEXAS APARTMENT ASSOCIATION

This ~ Contract is valid only if filled out before January 1 2016.

## Apartment Lease Contract

This is a binding contract. Read carefully before signing.

Date of Lease Contract: **September 3, 2015**
(when this Lease Contract is filled out)

### Moving In — General Information

**1. Parties.** This Lease Contract ("Lease") is between you, the resident(s) (list all people signing the Lease):

Carolyn Williams

and us, the owner: **Ladera**

(name of apartment community or title holder). You are renting Apartment No. **2411**, at **3930 Accent Drive**

(street address) in **Dallas**

(city), Texas **75287** (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above or, in the event of a sole resident's death, to someone authorized to act for the estate. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease is the entire agreement between you and us.

**2. Occupants.** The apartment will be occupied only by you and (list all other occupants not signing the Lease):

ABOVE NAMED ONLY

—and no one else. Anyone not listed here cannot stay in the apartment for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, 2 days total per month will be the limit.

**3. Lease Term.** The initial term of the Lease begins on the **2nd** day of **September** (month), **2015** (year), and ends at midnight the **1st** day of **September** (month), **2016** (year). After that this Lease will automatically renew month-to-month unless either party gives at least **60** days' written notice of termination or intent to move out as required by Par. 36. If the number of days isn't filled in, notice of at least 30 days is required.

**4. Security Deposit.** The total security deposit for all residents is $ **0.00** due on or before the date this Lease is signed. This amount (check one): ☐ does or ☒ does not include an animal deposit. Any animal deposit will be designated in an animal addendum. Security-deposit refund check and any deduction itemizations will be by (check one): ☒ one check jointly payable to all residents and mailed to any one resident we choose, or ☐ one check payable to and mailed to ___

(specify name of one resident).
If neither option is checked here, the first option applies. See Par. 40 and 41 for security-deposit return information.

**5. Keys, Move-Out, and Furniture.** You'll be given **2** apartment key(s), **2** mailbox key(s), and **1** other access devices for **Gate Remote**.
Before moving out, you must give our representative advance written move-out notice as stated in Par. 36. The move-out date in your notice (check one): ☐ must be the last day of the month, or ☒ may be the exact day designated in your notice. If neither option is checked here, the second applies. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order not to enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your apartment will be (check one): ☐ furnished or ☒ unfurnished.

**6. Rent and Charges.** You will pay $ **1330.00** per month for rent, in advance and without demand (check one): ☒ at the onsite manager's office or ☒ through our online payment site that

Prorated rent of $ **1285.67** is due for the remainder of the (check one): ☒ 1st month or ☐ 2nd month, on the ___ day of ___ (month), ___ (year).
You must pay your rent on or before the 1st day of each month (due date). There is no grace period. Cash is not acceptable without our prior written permission. You cannot withhold or offset rent unless authorized by law. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the ___ **3rd** day of the month, you'll pay an initial late charge of $ **100.00**, plus a daily late charge of $ **10.00** per day after that date until the amount due is paid in full. Daily late charges cannot exceed 15 days for any single month's rent. We won't impose late charges until at least the third day of the month. You'll also pay a charge of $ **75.00** for each returned check or rejected electronic payment, plus initial and daily late charges, until we receive acceptable payment. If you don't pay rent on time, you'll be in default and subject to all remedies under state law and this Lease. If you violate the animal restrictions in Par. 27 or other animal rules, you'll pay an initial charge of $ **100.00** per animal (not to exceed $100 per animal) and a daily charge of $ **10.00** per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is removed. You will have all other remedies for such violations.

**7. Utilities and Services.** We'll pay for the following items, if checked: ☐ gas ☐ water ☐ wastewater ☐ electricity ☐ trash/recycling ☐ cable/satellite ☐ master antenna ☐ internet ☐ stormwater/drainage ☒ other **NONE**

You'll pay for all other utilities and services, related deposits, and any charges or fees on such utilities and services during your Lease term. See Par. 12 for other related provisions regarding utilities and services.

**8. Insurance. Our insurance doesn't cover the loss of or damage to your personal property.** You are (check one):
☒ required to buy and maintain renter's or liability insurance (see attached addendum), or
☐ not required to buy renter's or liability insurance.
If neither option is checked, insurance is not required but is still strongly recommended. Even if not required, we urge you to get your own insurance for losses due to theft, fire, water, pipe leaks, and similar occurrences. Renter's insurance doesn't cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.

**9. Special Provisions.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease and will supersede any conflicting provisions of this printed Lease form.

If lease is broken all concessions/
discounts must be paid back. Resident
will be charged water, trash and Pest
Control. Rent is due on the 1st. No
checks accepted after the 3rd.

**10. Unlawful Early Move-Out And Reletting Charge.**
**10.1 Your Responsibility.** You'll be liable for a reletting charge of $ **1130.50** (not to exceed 85% of the highest monthly rent during the Lease term) if you (A) fail to move in, or fail to give written move-out notice as required in Par. 23 or 36; (B) move out without paying rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease. See the next section.

Your initials ___ Initials of Our Representative ___


DEFENDANT'S EXHIBIT

LADERA 000390

**10.2 Not a Release.** The reletting char~~ ~~either a Lease cancellation nor a buyout fee. It is a~~ ~~ted amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs as far as they can be determined. The reletting charge doesn't release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or dealing with unreturned keys; or other sums due.

## 11. Security Devices.

**11.1 What We Provide.** *Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peephole) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**11.2 Who Pays What.** We'll pay for missing security devices that are required by law. *You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.* You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

## 12. Other Utilities and Services.
Television channels that are provided may be changed during the Lease term if the change applies to all residents. You may use utilities only for normal household purposes and must not waste them. If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we'll attach an addendum to this Lease in compliance with state-agency rules. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $ **50 . 00** charge (not to exceed $50 per violation), plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you're in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you do choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

**Special Provisions and What If Clauses**

## 13. Damages and Reimbursement.

**13.1 Damage in the Apartment Community.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease or rules violation; improper use; negligence; other conduct by you, your invitees, your occupants, or your guests; or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

**13.2 Indemnification by You.** You'll defend, indemnify and hold us ha~~ ~~ from all liability arising from your conduct or tha~~ ~~of your invitees, your occupants, your guests, or our representatives who at your request perform services not contemplated in this Lease.

**13.3 Damage and Wastewater Stoppage.** *Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements, and damage of the following kind if occurring during the Lease term or renewal period: (A) damage to doors, windows, or screens; (B) damage from windows or doors left open; and (C) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.*

**13.4 No Waiver.** We may require payment at any time, including advance payment to repair damage that you are liable for. Delay in demanding sums you owe is not a waiver.

## 14. Contractual Lien and Property Left in Apartment.

**14.1 Lien Against Your Property for Rent.** *All property in the apartment (unless exempt under Texas Property Code sec. 54.042) is subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Texas Government Code sec. 2306.6738, for owners supported by housing-tax-credit allocations).* For this purpose, "apartment" excludes common areas but includes the interior living areas and exterior patios, balconies, attached garages, and any storerooms for your exclusive use.

**14.2 Removal After We Exercise Lien for Rent.** *If your rent is delinquent, our representative may peacefully enter the apartment, and remove and/or store all property subject to lien.* All property in the apartment is presumed to be yours unless proved otherwise. After the property is removed, a written notice of entry must be left in a conspicuous place in the apartment—including a list of items removed, the amount of delinquent rent due, and the name, address, and phone number of the person to contact. This notice must also state that the property will be promptly returned when the delinquent rent is fully paid.

**14.3 Removal After Surrender, Abandonment, or Eviction.** We, or law officers, may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you're judicially evicted or if you surrender or abandon the apartment (see definitions in Par. 41).

**14.4 Storage.**
(A) *No duty.* We'll store property removed under a contractual lien. We may—but we have no duty to—store property removed after judicial eviction, surrender, or abandonment of the apartment.
(B) *No liability.* We're not liable for casualty, loss, damage, or theft, except for property removed under a contractual lien.
(C) *Charges you pay.* You must pay reasonable charges for our packing, removing, storing, and selling of any property.
(D) *Our lien.* We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: our lien on property listed under Texas Property Code sec. 54.042 is limited to charges for packing, removing, and storing.

**14.5 Redemption.**
(A) *Property on which we have a lien.* If we've seized and stored property under a contractual lien for rent as authorized by law, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (see Par. 14.6(C)) is given before you seek redemption, you may redeem only by paying the delinquent rent plus our reasonable charges for packing, removing, and storing.
(B) *Property removed after surrender, abandonment, or judicial eviction.* If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage charges, damages, etc.
(C) *Place and payment for return.* We may return redeemed property at the place of storage, the management office, or the apartment that our option. We may require payment by cash, money order, or certified check.

**14.6 Disposition or Sale.**
(A) *Our options.* Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all personal property that is:

LADERA 000391

(1) left in the apartment after _____ under or abandonment; or

(2) left outside more than 1 hour after writ of possession is executed, following judicial eviction

(B) **Animals.** An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

(C) **Sale or property.** Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of the date, time, and place of sale is sent by both regular mail and certified mail return receipt requested to your last known address. The notice must itemize the amounts you owe and provide the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. The sale may be public or private. Subject to any third-party ownership or lien claims, must be the highest cash bidder, and may be in bulk, in batches, or item-by-item. If the proceeds from the sale are more than you owe, the excess amount must be mailed to you at your last known address within 30 days after sale.

**15. Failing to Pay First Month's Rent.** If you don't pay the first month's rent when or before the Lease begins, all future rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies and duties under Par. 10 and 32 apply to acceleration under this paragraph.

**16. Rent Increases and Lease Changes.** No rent increases or Lease changes are allowed before the initial Lease term ends, except for those allowed by special provisions in Par. 9, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under Par. 19. If at least 5 days before the advance-notice deadline referred to in Par. 3, we give you written notice of rent increases or Lease changes that become effective when the Lease term or renewal period ends, this Lease will automatically continue month-to-month with the increased rent or Lease changes. The new monthly rate will begin on the date stated in the notice (without new proration of signature) unless you give us written move-out notice under Par. 36. The written move-out notice under Par. 36 applies only to the end of the current Lease or renewal period.

**17. Delay of Occupancy.**

**17.1 Lease Remains in Force.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to:
(A) abatement of rent on a daily basis during delay, and
(B) your right to terminate the lease in writing as set forth below.

**17.2 Your Termination Rights.** Termination must be in writing. After termination, you are entitled only to refund of any deposit(s) and any rent you paid. Rent abatement or Lease termination does not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

**17.3 Notice of Delay.** If there is a delay of your occupancy and we haven't given notice of delay as set forth immediately below, you may terminate this Lease up to the date when the apartment is ready for occupancy, but not later.
(a) If we give written notice to any of you on your occupants when or after the Lease begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease within 3 days after you receive written notice, but no later.
(b) If we give any of you written notice before the date the Lease begins and the notice states that a construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease no later than 7 days after receiving your notice, but no later. The readiness date stated in the written notice becomes the new effective Lease date for all purposes. This new date can't be moved to an earlier date unless we and you agree in writing.

**18. Disclosure of Information.** If someone requests information about you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. As required by any utility provider may give us information about pending or actual connections or disconnections of utility service to your apartment.

---

**19. Community Policies and Rules.**

**19.1 Generally.** Our rules are considered part of this Lease. You, your occupants, and your guests must comply with all written apartment rules and community policies, including instructions for care of our property. We may regulate: (A) the use of patios, balconies, and porches; (B) the conduct of furniture movers and delivery persons; and (C) activities in common areas. We may make reasonable changes to written rules, and those rules can become effective immediately if the rules are distributed and applicable to all units in the apartment community and do not change the dollar amounts on pages 1 or 2 of this Lease.

**19.2 Some Specifics.** Your apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs.

**19.3 Limitations on Conduct.** Glass containers are prohibited in or near pools and all other common areas. Within the apartment community, you, your occupants, and your guests must not use candles or kerosene lamps or heaters without our prior written approval, or cook on balconies or outside. You, your occupants, and your guests must not solicit business or contributions. Conducting any kind of business (including child-care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes.

**19.4 Exclusion of Persons.** We may exclude from the apartment community any guests or others who in our judgment, have been violating the law, violating this Lease or apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

**19.5 Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants are convicted of or any felony or any misdemeanor involving a controlled substance, violence to another person, or destruction of property. You must also notify us within 15 days if you or any of your occupants register as a sex offender. Informing us of a criminal conviction or sex-offender registration does not waive any rights we may have against you.

**20. Prohibited Conduct.** You, your occupants, and your guests may not engage in the following activities:
(a) criminal conduct, manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; or displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others;
(b) behaving in a loud or obnoxious manner;
(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;
(d) disrupting our business operations;
(e) storing anything in closets containing gas appliances;
(f) tampering with utilities or telecommunications;
(g) bringing hazardous materials into the apartment community;
(h) using windows for entry or exit;
(i) heating the apartment with a gas-operated cooking stove or oven; or
(j) injuring our reputation by making bad-faith allegations against us to others.

**21. Parking.** We may regulate the time, manner, and place of parking of all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motor vehicles may not be parked inside an apartment, on a sidewalk, under stairwells, or in handicapped-parking areas. We may have any unauthorized or illegally parked vehicles towed away. Towing is done according to state law at the owner's or operator's expense. A vehicle is unauthorized or illegally parked if it:
(a) has a flat tire or other condition rendering it inoperable;
(b) is on jacks, on blocks, or has a wheel missing;
(c) takes up more than one parking space;

(d) belongs to a resident or oc      who has surren-
    dered or abandoned the apa       ent;
(e) is in a handicapped space without the legally required
    handicapped insignia;
(f) is in a space marked for office visitors, managers, or
    staff;
(g) blocks another vehicle from exiting;
(h) is in a fire lane or designated "no parking" area;
(i) is in a space marked for another resident or apartment;
(j) is on the grass, sidewalk, or patio;
(k) blocks a garbage truck from access to a dumpster;
(l) has no current license, registration, or inspection stick-
    er and we have given you at least 10 days' notice that
    the vehicle will be towed if not removed, or
(m) is not moved to allow parking for maintenance

## 22. Release of Resident.

**22.1 Generally.** *You may have the right under Texas law to
terminate the Lease early in certain situations involv-
ing family violence, certain sexual offenses, or stalking.*
Otherwise, unless you're entitled to terminate this Lease
under Par. 9, 17, 23, 31, or 36, you won't be released from
this Lease for any reason—including voluntary or involun-
tary school withdrawal or transfer, voluntary or involuntary
job transfer, marriage, separation, divorce, reconciliation,
loss of coresidents, loss of employment, bad health, prop-
erty purchase, or death.

**22.2 Death of Sole Resident.** If you are the sole resident and
die during the Lease term, an authorized representative
of your estate may terminate the Lease without penalty
by giving at least 30 days' written notice. Your estate will
be liable for paying rent until the latter of: (A) the termina-
tion date or (B) removal of all possessions in the apartment.
Your estate will also be liable for all charges and damages
until the apartment is vacated, and any removal or storage
costs.

## 23. Military Personnel.

**23.1 Termination Rights.** *You may have the right under Texas
law to terminate the Lease in certain situations involv-
ing military deployment or transfer.* You may terminate
the Lease if you enlist, are drafted into, or are commis-
sioned in the U.S. Armed Forces. You also may terminate
the Lease if:

(a) you are (1) a member of the U.S. Armed Forces or Re-
    serves on active duty, or (2) a member of the National
    Guard called to active duty for more than 30 days in re-
    sponse to a national emergency declared by the Presi-
    dent and

(b) you (1) receive orders for a permanent change of sta-
    tion, (2) receive orders to deploy with a military unit or
    as an individual in support of a military operation for
    90 days or more, or (3) are relieved or released from ac-
    tive duty.

**23.2 How to Terminate Under this Par. 23.** You must fur-
nish us a copy of your military orders, such as permanent
change-of-station orders, call-up orders, or deployment
orders (or letter equivalent). Military permission for base
housing doesn't constitute a permanent-change-of-sta-
tion order. You must deliver to us your written termination
notice, after which the Lease will be terminated under this
military clause 30 days after the date your next rent install-
ment is due. After your move-out, we'll return your secu-
rity deposit, less lawful deductions.

**23.3 Who May Be Released.** For the purposes of this Lease, or-
ders described in (b) under Par. 23.1 above will release only
the resident who qualifies under both (a) and (b) above
and receives the orders during the Lease term, plus that
resident's spouse or legal dependents living in the resi-
dent's household. A coresident who is not the spouse or
dependent of a military resident cannot terminate under
this military clause.

**23.4 Your Representations.** Unless you state otherwise in
Par. 9, you represent when signing this Lease that:

(a) you do not already have deployment or change-of-sta-
    tion orders;

(b) you will not be retiring from the military during the
    Lease term and

(c) the term of your enlistment or obligation will not end
    before the Lease term ends.

You must notify us immediately if you are called to active
duty or receive deployment or permanent-change-of-sta-
tion orders.

**23.5 Damages for False Representations.** Liability for dam-
ages for making a false representation of the above will be
the amount of unpaid rent for the remainder of the Lease
term when and if you move out, minus rents from others
received in mitigation under Par. 32.6.

## 24. Resident Safety and Loss.

**24.1 Disclaimer.** *We disclaim any express or implied war-
ranties of security. We care about your safety and that of
other occupants and guests. You agree to make every ef-
fort to follow any Security Guidelines Addendum attached
to this Lease. No security system is failsafe. Even the best
system can't prevent crime. Always act as if security sys-
tems don't exist since they are subject to malfunction,
tampering, and human error. The best safety measures
are the ones you take as a matter of common sense and
habit.*

**24.2 Your Duty of Due Care.** You, your occupants, and your
guests must exercise due care for your own and others'
safety and security, especially in using smoke alarms and
other detection devices, door and window locks, and other
safety or security devices. Window screens are not for se-
curity or to keep people from falling out of windows.

**24.3 Alarm and Detection Devices.**

(A) *What we'll do.* We'll furnish smoke alarms or other de-
    tection devices required by law or city ordinance. We
    may install additional detectors not so required. We'll
    test them and provide working batteries when you
    first take possession of your apartment. Upon request,
    we'll provide, as required by law, a smoke alarm capa-
    ble of alerting a person with a hearing-impairment dis-
    ability

(B) *Your duties.* You must pay for and replace batteries as
    needed, unless the law provides otherwise. We may re-
    place dead or missing batteries at your expense, with-
    out prior notice to you. You must immediately report
    alarm or detector malfunctions to us. Neither you nor
    others may disable alarms or detectors. *If you dam-
    age or disable the smoke alarm, or remove a bat-
    tery without replacing it with a working battery, you
    may be liable to us under Texas Property Code sec.
    92.2611 for $100 plus one month's rent, actual dam-
    ages, and attorney's fees.* You'll be liable to us and
    others if you fail to report malfunctions or fail to report
    any loss, damage, or fines resulting from fire, smoke, or
    water.

**24.4 Loss.** Unless otherwise required by law, we're not liable
to any resident, guest, or occupant for personal injury or
damage, loss of personal property, or loss of business or
personal income, from any cause, including fire, smoke,
rain, flood, water leaks, hail, ice, snow, lightning, wind, ex-
plosions, interruption of utilities, pipe leaks, theft, vandal-
ism, negligent or intentional acts of residents, occu-
pants, or guests. We have no duty to remove any ice, sleet,
or snow but may remove any amount with or without no-
tice. During freezing weather, or during freezing weather
you must for 24 hours a day (A) keep the apartment heat-
ed to at least 50 Fahrenheit, (B) keep cabinet and clos-
et doors open, and (C) drip hot- and cold-water faucets.
You'll be liable for any damage to our and others' property
caused by broken water pipes due to your violating these
requirements.

**24.5 Crime or Emergency.** Immediately dial 911 or call local
medical-emergency, fire, or police personnel in case of
accident, fire, smoke, suspected criminal activity, or any
other emergency involving imminent harm. You should
then contact our representative. Neither our security mea-
sures nor a express or implied warranty of security—or a
guarantee against crime or reduced risk of crime. Unless
otherwise provided by law, we're not liable to you, your
occupants, or your guests for injury, damage, or loss to per-
son or property caused by criminal conduct of other per-
sons, including theft, burglary, assault, vandalism, or other
crimes. Even if previously provided, we're not obligated to
furnish security personnel, patrols, lighting, gates, fences,
or other forms of security unless required by law. We're not
responsible for obtaining criminal-history checks on any
residents, occupants, guests, or contractors. If the apart-
ment community if you, your occupants, or your guests
are affected by a crime, you must make a written report to
the appropriate local law enforcement agency and to our
representative. You must also furnish us the law enforcement
agency's incident report number upon request.

## 25. Condition of the Premises and Alterations.

**25.1 As-Is.** We disclaim all implied warranties. You accept the
apartment, fixtures, and furniture as is, except for condi-
tions materially affecting the health or safety of ordinary
persons. You'll be given an inventory & Condition form on
or before move-in. Within 48 hours after move-in, you must
note on the form all defects or damage, sign the form, and
return it to us. Otherwise, everything will be considered to
be in a clean, safe, and good working condition.

LADERA 000393

**25.2 Standards and Improvements.** ... not use customary ... ... of general in maintaining the apart... and not damaging or littering the common areas. Unless authorized by law or by us in writing, you must not do any repair, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless our rules state otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and grooves of wood-paneled walls. No water furniture, washing machines, extra phone or television outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by law or we've consented in writing. You may install satellite dishes or antennas, but only if you sign our satellite dish or antenna lease addendum, which complies with reasonable restrictions allowed by law. You must not alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephones, and ... security devices, or ... If we or our representatives install new locks, security devices, or ... in our ... supply light bulbs for fixtures we furnish, including exterior fixtures operated by means of the switch inside the apartment; that you replace them at our expense ... if we ... the same type and wattage. Your improvements to the apartment are made with or without our consent become ours unless we agree otherwise in writing.

**25.3 Fair Housing.** We are committed to the principles of fair housing. In accordance with fair-housing laws, we'll have reasonable accommodations for ... rules, policies, practices, or services. We'll allow reasonable modifications at ... their own to give ... usual access to or full use of the apartment community. You ... they require that we ... or addendum regarding the implementation of ... in relation to ... and ... ... legal or if any ...

## 26. Requests, Repairs, and Malfunctions.

**26.1 Written Requests Required.** *If you or any resident needs to send a notice or request— for example, for repairs, installations, services, ownership disclosure, or security-related matters— it must be written, signed, and delivered to our designated representative* except in case of fire, smoke, gas, explosion, overflowing sewage, or uncontrollable running water; electrical, smoke, or ... in progress; or flooding, accumulation, or ... such ... Our written rules on ... and request us not to ... advise us in this request that you ... The conditions ... of responding to any oral request or advising ... any other matter doesn't waive the strict requirements for written notices under this lease.

**26.2 Required Notifications.** You must promptly notify us in writing of water leaks, mold, electrical problems, ... tripping of any breakers or tripping of GFCI, broken or missing locks or latches, and ... other condition that poses a hazard to property, health, or safety.

**26.3 Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done without substantially or unreasonably increasing your utility costs. We may turn off equipment and interrupt utilities ... ... to avoid property damage or to perform work, but ... bills, malfunction, or as necessary by law, solar or whatever you owe liability or reimbursement whenever ...

**26.4 Air-Conditioning and Other Equipment.** ... ... the problems are normal, not emergencies. If an appliance, furniture, other end-of-end malfunction, you must notify us as soon as possible on a business day. We'll act with reasonable diligence to make repairs, and try to correct any ... and in consideration when casualties or are improperly ... are received. Your rent without abate or reduce by any ...

**26.5 Our Right to Terminate.** If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease by giving you at least 5 days written notice. We also have the right to terminate this Lease during the term for any repairs ... and to end ... if ... casualty. If we do so by terminating this Lease, accelerated rent, and ... damages ... as well as partly ... in which case you ... to us if ... rental ... from us and ... if ...

## 27. Animals.

**27.1 No Animals Without Consent.** *No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.* If we allow an animal, you must sign a separate animal addendum ... ... and animal fees, additional rent, animal deposits, or increased ... deposits. An animal deposit is considered a general security deposit. ...

The animals ... which are subject to ... rules governing animals, ... ... assistance or service animals. We'll authorize an assistance or support animal for a disabled person without requiring an animal deposit. We may require verification of ... a disability, but we won't require such an animal. You must not let a stray or wild animal in.

**27.2 Violations of Animal Policies.**

(A) *Charges for Violations.* If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for all cleaning and repair costs, including defleaing, deodorizing, and shampooing. Any of our other remedies ... eviction charges and animal removal charges including charges for our time, initial damages and our charges and all of our fees and if disputes ... to us for any enforcement action ... ...

(B) *Removal of an Animal.* We may remove an animal ... ... if it (1) is sick, (2) is conspicuous or bothers someone, or (3) we have notice of our intent to remove the animal within 24 hours and we'll follow legal ... rights if the 24-hour notice or is deemed that an animal is not subject to our local animal control or ... registration ... We're keeping of animals at all times, ... able for loss, harm, or injury to our or ... in ... of any negligence or wrongful act ... or responsible care ... but having during ... We'll act on the animal to you ... ... our ... to ... a ... location to ... having a ... and ... ... compensation. We'll not abide by your ... for any purpose.

28. When ... Entry Rules. If you or your guest is not present, the ... ... or ... ... ... government representative is authorized ... to ... residents or buyers ... ... a representative is authorized ... or under your rules, ... ... or ... ... enter the apartment ... ... business purposes. If entry notice has been given through personal may enter at any time in ... a repair ... that we'll duplicate or master ... ... ... ... ... ... ... ... ... when necessary. If someone is ... we may ... ... notice of the entry. If ... ... ... ... ... ... immediately after entry.

29. **Multiple Residents.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or rules, all residents are considered to have violated the Lease. Our requests and notices ... to any one of you ... ... all of you with regard to ... No ... notices or representations by us ... constitute notices to all others in the ... ... ... ... ... may be given ... ... deal for ... ... ... consider ... ... the rights of all others ... ... and ... of proceeds ... ... ... ... ... the Lease will indemnify the ... ... ... all of you in ...



## 30. Replacements and Subletting.

**30.1 What Allowed.** Replacing a resident, subletting, or assignment is allowed only if we consent in writing. If we approve subletting, it does not change any of ... lease terms and after carrying out and assignments ... ... subletting, or assignment, then ...

(a) a deletion charge will not be met;
(b) a reasonable administrative/transaction cost will be due, and a subsequent holder will ... if subletting is required; ...
(c) ... will ... ... ... ... ... ... ... original obligation.

**30.2** ... ... ... deposit ... rent, it is considered a replacement ... ... ... ... ... ... ... ... ... ... in ... ... ... ... release ... ... we'll ... ... ... security deposit ... ... ... ... ... the replacement deposit ... ... ... ... ... remaining resident ... ... ... ... ... ... security deposit ... ... ... ... ... ... holder of the ... if ... ... ... ... ... otherwise in writing.

## Responsibilities of Owner [illegible]

### 31. Our Responsibilities.

**31.1 Generally.** We'll act with customary diligence to:

(a) keep common areas reasonably clean, subject to Par. 2[illegible];

(b) maintain fixtures, hot water, heating, and air conditioning equipment;

(c) substantially comply with all applicable [illegible] safety, sanitation, and fair housing; and

(d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.

**31.2 Your Remedies.** *If we violate any of the above, you may possibly terminate this Lease and exercise [illegible] dies under Texas Property Code Sec. 9[illegible] this procedure:*

(a) all rent must be current, and you must make a written request for repair or remedy of the condition [illegible] which we'll have a reasonable time [illegible];

(b) if we fail to do so, you must make a second written request for the repair or remedy [illegible] has been no miscommunication between us—after which we'll have [illegible] remedy; and

(c) if the repair or remedy still hasn't been [illegible] within that reasonable time period, you may immediately terminate this Lease [illegible] final written notice.

*You also may exercise other statutory [illegible] for those under Texas Property Code sec. 92.056.*

**31.3 Request by Mail.** Instead of giving the two written requests [illegible] above, you may give us one request by certified mail, return receipt requested [illegible] mail—after which we'll have a reasonable time to repair or remedy. "Reasonable time" accounts for the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current [illegible] request. We'll refund security deposits and prorated rent [illegible] by law.

### 32. Default by Resident.

**32.1 Acts of Default.** You'll be in default if: (A) you don't timely pay [illegible] violate this Lease [illegible] rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (C) you abandon the apartment; (D) you gave incorrect or false answers in a rental application; (E) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor; (F) you are found to have any illegal drugs or paraphernalia in your apartment; or (G) you or any occupant, in bad faith, makes an invalid [illegible] to an official or employee of a utility company or of the government.

**32.2 Eviction.** *If you default or hold over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.* Notice may be given by [illegible] mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; or (5) affixing the notice to the inside of the apartment [illegible]. Notice by mail will be considered delivered on the earlier of actual delivery, or 3 days (not counting Sundays or federal holidays) after the notice is deposited in the U.S. Postal Service with postage. [illegible] one time rent [illegible] the rent or other Lease obligations. *After you're given notice to vacate or filing an eviction suit, we may still accept rent or other sums due;* the filing or acceptance doesn't waive or diminish our right of eviction [illegible] statutory right. Accepting money at any time [illegible] our right to damages, to past or future rent [illegible], or to our continuing with eviction proceedings.

**32.3 [illegible]** all [illegible] or [illegible] (A) you have moved out [illegible] property in the apartment [illegible] of intent to move out [illegible] the Lease [illegible] period ends; and (D) you haven't paid in full [illegible] the entire [illegible]

a default [illegible] remaining [illegible] evicted or move out [illegible] as limited. Acceleration is subject to our mitigation obligations below.

**32.4 Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (C) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease of a new [illegible] and (D) at our option, we may extend the Lease term—for up to [illegible] extension—by delivering written notice to you or your apartment while you continue to hold over.

**32.5 Other Remedies.** We may report unpaid amounts to credit agencies [illegible] tries to collect any money you owe us, you agree that we, or the [illegible] may use [illegible] in addition to other sums due, any amounts stated to be rental [illegible] your default [illegible] including Lease [illegible] Property Code [illegible] prohibited by [illegible] 38 for [illegible] A prevailing party [illegible] fees and all [illegible] prevailing parties [illegible] attorney's fees and litigation costs [illegible] seeking personal injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease. You agree that late charges are liquidated damages representing a reasonable [illegible], and [illegible] not [illegible] amounts [illegible] year [illegible] pay [illegible] with- [illegible] payment [illegible] fees will be added if [illegible]

**32.6 Mitigation of Damages.** [illegible] you'll be [illegible] exercise [illegible] damages. We'll [illegible] subsequent [illegible] liability for past-due and future [illegible]

[illegible]

### 33. Other Important Provisions

**33.1 [illegible]** *our representatives* [illegible] *employees, or* [illegible] *to waive, amend, or terminate this Lease or any part of it unless in writing,* [illegible] *representations, or agreements that impose* [illegible] *obligations* [illegible]. Any [illegible] apartment [illegible] estimates; actual dimensions and sizes may vary. No action or omission by us will be considered a waiver of our rights or of any subsequent [illegible] not [illegible] requirements [illegible] rights [illegible] when notice [illegible] notice [illegible] If any [illegible] separate [illegible] executed. [illegible] notice [illegible] Lease [illegible] that was [illegible] electronic [illegible] agreement. Unless [illegible] any notice required [illegible] may be [illegible]

**33.2 [illegible]** exercising [illegible] other

LADERA 000395

[illegible] All provisions [illegible] duty apply to [illegible] employees, [illegible] companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. Neither an invalid clause nor the omission of initials on any page invalidates this Lease. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you and we agree to waive any insurance subrogation rights. All notices and documents may be in English [illegible]

**34. Payments.** [illegible] When we receive money, other than sale proceeds under [illegible] utility payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. [illegible]

[illegible]

**36. Move-Out Notice.**

**36.1** [illegible] [illegible]

**36.2** [illegible]

**37. Move-Out Procedures.** [illegible]

the Lease [illegible] entire Lease [illegible] may result in [illegible] under Par. 10 and 32. [illegible] deposit to rent. [illegible] move out. All [illegible] abandon the [illegible] begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning [illegible] wear [illegible] carelessness [illegible]

**39. Move-Out** [illegible] representative [illegible] authority [illegible] deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for [illegible] unpaid rent; unpaid utilities [illegible] damages caused [illegible] use, including [illegible] approved holes [illegible] attached to the [illegible] alarm [illegible] or [illegible] your [illegible] if you so request [illegible] apartment when you [illegible] keys; [illegible] unauthorized [illegible] agreed reletting charges; [illegible] removed or stored [illegible] illegally parked vehicles [illegible] vehicles blocking [illegible] due to [illegible] government [illegible] occupants [illegible] and [illegible] late payment [illegible] exceed [illegible] of an animal [illegible] attorney's fees [illegible] and other [illegible] charges for [illegible] Par. [illegible] move-out [illegible] reletting [illegible]

**41. Deposit** [illegible]

**41.1** [illegible] refund [illegible] any [illegible] abandonment [illegible]

**41.2** [illegible] (A) [illegible] the [illegible] apartment [illegible] in [illegible]

**41.3** Abandonment. [illegible] apartment [illegible] (B) [illegible] you've [illegible] not [illegible] left [illegible] resident.

**41.4** The ending of [illegible] surrender, abandonment, or [illegible] possession for all purposes [illegible] make [illegible] security [illegible] apartment [illegible] affect [illegible] but [illegible]

LADERA 000396

- Address: 3930 Account Drive
- Beginning date of Lease (Par. 3) ___ 09/02/200 5
- Number of days notice for termination (Par. 3) ___ 60 ___
- Total security deposit (Par. 4) $ ___ 0.00 ___
- Ending date of Lease (Par. 3) ___
- Consent for guest staying more than ___ days (Par. 2)
- Animal deposit (Par. 27) $ ___ 150.00 ___
- Security deposit (Par. 4) □ does or □ does not include animal deposit.
- Security deposit refund check will be by the □ check over □ one check jointly payable to all residents default.
  OR □ one check payable to one individual.
- # of keys/access devices that is for _2_ units, _2_ mailbox, __other _____ G. Ba. Bettejte
- You ___
- Check ___
- Rent to be paid (Par. 6) (check all that apply) ☑ at onsite managers office
  □ at ___
- Check here if included in monthly rent □ carport □ storage □ carport □ washer ___
- Total monthly rent (Par. 6) $ ___ 1129.00 ___
- Late charges if rent is not paid on or before the _2_ (and
- Initial late charge (Par. 6) $ ___ 200.00 ___
- Returned-check charge (Par. 6) $ ___ 25.00 ___
- Monthly animal rent (Par. 6) $ ___ 15.00 ___
- Monthly pest control (Par. 6) $ ___ 1.00 ___
- Prorate rent for 8/ days of $ ___
- 50 first month of Termination $ ___
- Daily late charge (Par. 6) $ ___ 10.00 ___
- Animal additional deposit (Par. 27)
  Initial $ ___ 200.00 ___ Daily $ ___ 10.00 ___
- Monthly totals __ sum of any ___
- Utilities paid by owner (Par. 7) (check all that apply) □ electricity, □ gas, □ water, □ wastewater, □ trash, □ cable/satellite
  □ gas ___ □ insurance □ other □ drainage, □ ___
- Utility connection charge (Par. 12) $ ___ 10.00 ___
- Agreed reletting charge (Par. 10) $ ___ 2437.80 ___
- You are □ are not □ required to pay a reletting OR
- □ not required to pre-purchase renter's
- Special provisions (Par. 31) lease, no broker, all concession, __ tenant must be paid keep ___
  **Resident will be charged water**, trash and **Pest Control** there is due on the 1st, and no
  **checks accepted after the 3rd**

**42. Attachments** ___

- ☒ Access and Addendum
- ☒ Addition of Special Provisions
- ☒ Allocation Addendum for ___
- ☒ Animal Addendum
- ☐ ___
- ☒ Bed Bug Addendum
- ☐ Lead ___
- ☒ Enclosed Garage, Carport or Storage Unit Addendum
- ☐ Intrusion Alarm Addendum
- ☒ Inventory & Condition Form
- ☐ ___
- ☐ ___
- ☒ ___
- ☐ ___
- ☐ Notice of Intent to Move Out Form
- ☐ ___
- ☒ Rent ___
- ☐ Renter's or Liability Insurance Addendum
- ☐ Repair or Service Request Form
- ☒ Satellite Dish or Antenna Addendum
- ☒ ___
- ☐ ___
- ☐ ___
- ☐ ___
- ☐ ___

*Name, address and other information of locator service is obtainable*
*—must by owner immediately after commencement of the lease*

Resident or Residents ___
(Name of Resident) ___ Date signed
(Name of Resident) ___ Date signed
(Name of Resident) ___ Date signed
(Name of Resident) ___ Date signed
(Name of Resident) ___ Date signed

Owner or Owner's Representative signing on behalf of owner

Address (and only name and street address of owner's representative for notice purposes
3901 ___
Dallas ___
(972) 30 ___

After-hours phone number ___ (972) 30 ___
(Always call on a ___ code, fire or other emergencies)

Date (when the ___) ___ 09/07/200 5

LADERA 000397

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back          Location : All JP & County Courts   Help

# REGISTER OF ACTIONS
## CASE NO. E20-0302J6

Ladera vs Carolyn Williams

§
§
§
§
§
§

Case Type: **Evictions**
Date Filed: **01/16/2020**
Location: **Justice of the Peace Pct #6**
Judicial Officer: **Lopez, Christopher**
File Custody/Location: **Justice of the Peace Pct 6**

---

### RELATED CASE INFORMATION

**Related Cases**
CV-2020-00600-JP (Related Case)

---

### PARTY INFORMATION

|  |  |  | Lead Attorneys |
|---|---|---|---|
| Defendant | Williams, Carolyn<br>3930 Accent Drive 2411<br>Dallas, TX 75287 | DOB: 03/09/1961 | |
| Plaintiff | Ladera<br><br>3939 Trinity Mills Rd<br>Dallas, TX 75287 | | Daniel Paz<br>*Retained*<br>14330 Midway RD<br>STE 214<br>Dallas, TX 75244<br><br>214-812-9061(W)<br>214-812-9420(F) |

---

### EVENTS & ORDERS OF THE COURT

|  | DISPOSITIONS |
|---|---|
| 02/11/2020 | **Default Judgment to Plaintiff** (Judicial Officer: Lopez, Christopher)<br>Judgment of $1,990.14<br>  Awarded To: Ladera<br>  Awarded Against: Carolyn Williams |

**DEFENDANT'S EXHIBIT**

2

|  | OTHER EVENTS AND HEARINGS |  |  |
|---|---|---|---|
| 01/16/2020 | **Eviction Petition**<br>*no military* | | |
| 01/16/2020 | **Citation - Eviction** | | |
| 01/16/2020 | **Citation - Eviction** | | |
| | Williams, Carolyn | Served | 01/23/2020 |
| | | Returned | 01/24/2020 |
| 01/23/2020 | **Citation Served** | | |
| 02/03/2020 | **Answer Filed** | | |
| 02/03/2020 | **Jury Request** | | |
| 02/06/2020 | **Trial by Judge**  (9:00 AM) (Judicial Officer Lopez, Christopher) | | |
| 02/06/2020 | **Notice of Hearing** | | |
| 02/06/2020 | **Notice of Hearing** | | |
| 02/10/2020 | **Motion for Continuance**<br>*Defendant* | | |
| 02/10/2020 | **Motion for Continuance Denied** | | |
| 02/11/2020 | **Trial by Jury**  (1:30 PM) (Judicial Officer Lopez, Christopher) | | |
| 02/11/2020 | **Judgment/Order Mailed to Parties** | | |
| 02/12/2020 | **Statement of Inability to Afford Payment of Court Costs** | | |
| 02/12/2020 | **Cases Appealed - Without Trial (OCA)** | | |
| 02/13/2020 | **Notice of Rent Due**<br>*mailed and sent via efile* | | |
| 02/13/2020 | **Notice of Statement of Inability to Afford Payment of Costs** | | |
| 02/20/2020 | **Appeal Transferred to County Clerk** | | |

---

### FINANCIAL INFORMATION

|  |  |  |  |  |
|---|---|---|---|---|
| | **Defendant** Williams, Carolyn | | | |
| | Total Financial Assessment | | | 22.00 |
| | Total Payments and Credits | | | 22.00 |
| | **Balance Due as of 03/02/2021** | | | **0.00** |
| 02/04/2020 | Transaction Assessment | | | 22.00 |
| 02/04/2020 | Payment | Receipt # 96095-J6 | Al Williams | (22.00) |

| | | | | |
|---|---|---|---|---|
| **Plaintiff** Ladera | | | | |
| Total Financial Assessment | | | | 121.00 |
| Total Payments and Credits | | | | 121.00 |
| **Balance Due as of 03/02/2021** | | | | **0.00** |

| | | | | |
|---|---|---|---|---|
| 01/16/2020 | Transaction Assessment | | | 121.00 |
| 01/16/2020 | Payment | Receipt # 95866-J6 | Judith McMakin | (121.00) |

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back      Location : All JP & County Courts   Help

# REGISTER OF ACTIONS
## CASE NO. CV-2020-00600-JP

| | | | |
|---|---|---|---|
| Ladera vs. Carolyn Williams | § | Case Type: | **Appeal from a Lower Court** |
| | § | Subtype: | **FED- JP Appeal** |
| | § | Date Filed: | **02/20/2020** |
| | § | Location: | **County Court At Law #2** |
| | § | Judicial Officer: | **Ramirez, Robert C.** |
| | § | Court of Appeals Cause No: | **02-20-00127-CV** |
| | § | File Custody/Location: | **Electronic File** |

---

### RELATED CASE INFORMATION

**Related Cases**
E20-0302J6 (Related Case)

---

### PARTY INFORMATION

| | | | | |
|---|---|---|---|---|
| | | | | **Lead Attorneys** |
| **Defendant** | **Williams, Carolyn** | | | Pro Se |
| | 3930 Accent Drive 2411 | | | |
| | Dallas, TX 75287 | | DOB: 03/09/1961 | |
| | | | | |
| | | | | |
| **Plaintiff** | **Ladera** | | | **Daniel Paz** |
| | | | | *Retained* |
| | 3939 Trinity Mills Rd | | | 14330 Midway RD |
| | Dallas, TX 75287 | | | STE 214 |
| | | | | Dallas, TX 75244 |
| | | | | |
| | | | | 214-812-9061(W) |
| | | | | 214-812-9420(F) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 03/05/2020 | **Final Judgment after Non-Jury Trial** (Judicial Officer: Ramirez, Robert C.) |
| | |
| | **OTHER EVENTS AND HEARINGS** |
| 02/20/2020 | **Appeal from Lower Court (OCA)** |
| | *JP6* |
| 02/20/2020 | **Statement of Inability to Afford Pmt of Court Costs** |
| 02/20/2020 | **Cover Letter or Request** |
| | *from Ms. Williams* |
| 02/20/2020 | **Motion** |
| | *to reconsider from JP* |
| 02/20/2020 | **Notice- Appeal from JP with Affidavit of Inability to Pay** |
| 02/24/2020 | **Bond Deposit** |
| | *$1,482.00* |
| 02/27/2020 | **Motion for Continuance** |
| | *and Motion for Appointment of Counsel* |
| 03/03/2020 | **Answer(s) and/or Response(s)** |
| | *and request to dismiss and Transfer to Dallas County* |
| 03/05/2020 | **Inability to Pay Fee/ Forcible Entry Detainer Appeal hearing** (3:30 PM) (Judicial Officer Ramirez, Robert C.) |
| 03/05/2020 | **General Docket Entry** |
| | *Pauper's / FED appeal - p appeared through counsel - halls called no d - allowed to proceed as a pauper - trial de novo - p's case in chief - judgment for p - entered* |
| 03/05/2020 | **Notice of Judgment** |
| 03/09/2020 | **Motion** |
| | *to Reconsider or Application for Stay and Bond During Appeal to Supreme Court* |
| 03/13/2020 | **Request** |
| | *Plaintiff's Request for a Writ of Possession* |
| 03/13/2020 | **Service Issued** |
| | *Writ of Possession-service by Denton Cty Const Pct 6* |
| 03/13/2020 | **Writ of Possession** |
| | *service by Denton Cty Const Pct 6* |
| |   Williams, Carolyn           Returned Unserved   06/12/2020 |
| |                              Returned                06/12/2020 |
| 03/19/2020 | **Application** |
| | *for emergency temporary restraining order* |
| 03/23/2020 | **Motion for Reconsideration** (10:00 AM) (Judicial Officer Ramirez, Robert C.) |
| 03/23/2020 | **General Docket Entry** |
| | *Motion for reconsideration / TRO - p appeared by phone - d was provided w/ phone and zoom video invitation and did not appear (confirmed with court coordinator who stated d did not call in or video in) - pursued under SC COVID 19 procedures - denied both of p's request - other remedies at law and waiver as to any issue of jury trial. awaiting order from P* |
| 03/23/2020 | **Order** |
| | *Def's Application for TRO* |

| Date | Entry |
|---|---|
| 03/23/2020 | **Order** |
| | *on Motion for Reconsideration* |
| 04/27/2020 | **Notice of Appeal** |
| 04/28/2020 | **Court of Appeals Correspondence** |
| 04/28/2020 | **Proposed Order** |
| | *Supersedeas Bond* |
| 05/14/2020 | **Motion To Set Bond**  (9:00 AM) (Judicial Officer Ramirez, Robert C.) |
| | *Williams to call in for hearing call Mr. Paz for hearing 214-812-9061* |
| 05/14/2020 | **General Docket Entry** |
| | *D's motion for supers bond - p and d appeared by phone - COVID 19 orders - granted based upon SC COVID 19 order with regard to deadlines - awaiting order from p* |
| 05/14/2020 | **Order** |
| | *Setting Supersedeas Bond* |
| 05/18/2020 | **Bond Deposit** |
| | *$3,000.00* |
| 06/02/2020 | **Request** |
| | *Plaintiff's Request for a Writ of Possession* |
| 06/02/2020 | **Service Issued** |
| | *Writ mailed for Constable Pct 6/ writ being returned* |
| 06/02/2020 | **Writ of Possession** |
| | Williams, Carolyn                                   Unserved |
| 06/08/2020 | **Bond Deposit** |
| | *$2,936.00* |
| 06/12/2020 | **Service Returned** |
| 06/30/2020 | **Clerk's Record on Appeal** |
| 07/14/2020 | **Court of Appeals Correspondence** |
| | *Clerk's Record Received* |
| 09/03/2020 | **Bond Deposit** |
| | *$1462.28* |
| 10/01/2020 | **Bond Deposit** |
| | *$1,428.17* |
| 11/03/2020 | **Bond Deposit** |
| | *$1,428.61* |
| 12/11/2020 | **Bond Deposit** |
| | *$1,428.12* |
| 01/08/2021 | **Bond Deposit** |
| | *$468.28* |
| 01/22/2021 | **Memorandum Opinion and Judgment** |
| | *Opinion* |
| 01/22/2021 | **Memorandum Opinion and Judgment** |
| | *Judgment* |
| 01/22/2021 | **Court of Appeals Correspondence** |
| 01/25/2021 | **Request** |
| | *Plaintiff's Request for a Writ of Possession* |
| 01/25/2021 | **Service Issued** |
| | *Service by Constable Precinct 6* |
| 01/25/2021 | **Writ of Possession** |
| | Williams, Carolyn                                   Unserved |
| 02/01/2021 | **Motion to Strike** |
| 02/01/2021 | **Bond Deposit** |
| | *$105.00* |
| 02/01/2021 | **Cover Letter or Request** |
| | *envelope* |
| 02/02/2021 | **Motion** |
| | *Plaintiff's Motion for Execution of a Writ of Possession* |
| 02/05/2021 | **Notice of Hearing** |
| 02/17/2021 | **Motion to Enter**  (10:00 AM) (Judicial Officer Ramirez, Robert C.) |
| | *writ of possession* |
| 02/22/2021 | **Amended** |
| | *Amended Objection to Ladera's Request for (Physical Removal)/Execution of Writ of Possession* |
| 02/22/2021 | **Amended** |
| | *Carolyn Williams Amended Objection* |
| 03/02/2021 | **Motion to Quash** |
| 03/04/2021 | **Motion to Enter**  (10:00 AM) (Judicial Officer Ramirez, Robert C.) |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Defendant** Williams, Carolyn | | | |
| Total Financial Assessment | | | 4.00 |
| Total Payments and Credits | | | 4.00 |
| **Balance Due as of 03/02/2021** | | | **0.00** |
| 02/20/2020 | Transaction Assessment | | 277.00 |
| 03/05/2020 | Pauper Wavier | | 277.00 |
| 02/01/2021 | Transaction Assessment | | 4.00 |
| 02/03/2021 | Payment          Receipt # 2021-0610          Williams, Carolyn | | (4.00) |
| | | | |
| **Plaintiff** Ladera | | | |
| Total Financial Assessment | | | 479.00 |

| | Total Payments and Credits | | | 479.00 |
| | **Balance Due as of 03/02/2021** | | | **0.00** |

| | | | | |
|---|---|---|---|---|
| 03/13/2020 | Transaction Assessment | | | 157.00 |
| 03/13/2020 | TexFile Payment | Receipt # 2020-1362 | Ladera | (157.00) |
| 06/02/2020 | Transaction Assessment | | | 160.00 |
| 06/02/2020 | TexFile Payment | Receipt # 2020-2308 | Ladera | (160.00) |
| 01/25/2021 | Transaction Assessment | | | 162.00 |
| 01/25/2021 | TexFile Payment | Receipt # 2021-0400 | Ladera | (162.00) |

Case:

**02-20-00127-CV**

Date Filed:

04/27/2020

Case Type:

Forcible entry & detainer

Style:

Carolyn Williams

v.:

Ladera

Orig Proc:

No

Transfer From:


Transfer In:


Transfer Case:


Transfer To:


Transfer Out:


Pub Service:

West Publishing

## APPELLATE BRIEFS

| Date | Event Type | Description | Document |
|------|------------|-------------|----------|

| Date | Event Type | Description | Document |
|---|---|---|---|
| 12/14/2020 | Brief struck | Appellant | |

## CASE EVENTS

| Date | Event Type | Disposition | Document | |
|---|---|---|---|---|
| 02/25/2021 | Motion for rehearing disposed | Motion or Writ Denied | [ PDF/93 KB ] | Notice |
| 02/25/2021 | Motion for rehearing disposed | Motion or Writ Denied | [ PDF/94 KB ] | Notice |
| 02/23/2021 | Letter issued by the court | | [ PDF/100 KB ] | Notice |
| 02/22/2021 | Document Received | | | |
| 02/16/2021 | Motion for rehearing filed | | [ PDF/4.66 MB ] | Motion |
| 02/01/2021 | Motion for emergency relief disposed | Motion or Writ Denied | [ PDF/91 KB ] | Notice |
| 01/29/2021 | Motion for rehearing filed | | [ PDF/463 KB ] | Motion |
| 01/29/2021 | Motion for emergency relief filed | | | |
| 01/28/2021 | Motion for emergency relief filed | | | |
| 01/21/2021 | Memorandum opinion issued | Dismissed | [ PDF/95 KB ] Judgment [ PDF/128 KB ] Memorandum Opinion [ PDF/90 KB ] Notice | |
| 01/21/2021 | Motion disposed | Motion or Writ Denied | | |
| 01/20/2021 | Submitted | | | |
| 01/13/2021 | Reply to response or motion filed | | | |
| 01/11/2021 | Reply to response or motion filed | | | |
| 01/07/2021 | Response filed | | | |
| 12/29/2020 | Response requested by the court | | [ PDF/103 KB ] | Notice |
| 12/28/2020 | Motion filed | | | |
| 12/15/2020 | Letter issued by the court | | [ PDF/111 KB ] | Notice |
| 12/15/2020 | Corrected brief requested | | [ PDF/112 KB ] | Notice |
| 12/14/2020 | Motion to supplement record filed | | [ PDF/364 KB ] | Motion |
| 12/14/2020 | Brief struck | | | |
| 12/08/2020 | Motion for extension of time to file brief disposed | Motion or Writ Granted | [ PDF/95 KB ] | Notice |

| Date | Event Type | Disposition | Document | |
|------|------------|-------------|----------|---|
| 12/07/2020 | Motion for extension of time to file brief filed | | [ PDF/89 KB ] | Motion |
| 11/03/2020 | Motion for extension of time to file brief disposed | Motion or Writ Granted | [ PDF/99 KB ] | Notice |
| 10/19/2020 | Motion for extension of time to file brief filed | | [ PDF/430 KB ] | Motion |
| 10/08/2020 | Notice of late brief | | [ PDF/111 KB ] | Notice |
| 08/24/2020 | No reporters record filed in civil case | | [ PDF/128 KB ] | Notice |
| 07/31/2020 | Court reporters notice to court regarding status of record | | [ PDF/149 KB ] | Letter |
| | | | [ PDF/115 KB ] | Notice |
| 07/27/2020 | Docketing statement filed | | | |
| 07/16/2020 | Notice of late docketing statement | | [ PDF/108 KB ] | Notice |
| 06/30/2020 | Electronic Clerks Record Filed | | [ PDF/88 KB ] | Notice |
| 06/29/2020 | Notice of late docketing statement | | [ PDF/108 KB ] | Notice |
| 04/27/2020 | Notice of appeal filed in court of appeals | | [ PDF/125 KB ] | Notice |

## CALENDARS

| Set Date | Calendar Type | Reason Set |
|----------|---------------|------------|
| 03/01/2021 | Status | Compliance response due |
| 03/29/2021 | Status | Release to publisher |
| 05/06/2021 | Status | Mandate to Issue |

## PARTIES

| Party | PartyType | Representative |
|-------|-----------|----------------|
| Ladera | Appellee | Daniel Paz |
| Williams, Carolyn | Appellant | Carolyn Williams |

## TRIAL COURT INFORMATION

Court

County Court at Law No. 2

County

Denton

Court Judge

Honorable Robert Ramirez

Court Case

CV-2020-00600-JP

Reporter

Court Reporter, County Court At Law No. 2, Denton County

Punishment

To view or print PDF files you must have the Adobe Acrobat® reader. This software may be obtained without charge from Adobe. Download the reader from the Adobe Web site

## Daniel Paz

**From:** a williams <alwms870@gmail.com>
**Sent:** Saturday, January 30, 2021 1:16 AM
**To:** Daniel Paz
**Subject:** Fwd: Carolyn Williams Unit 2411
**Attachments:** CCF01302021.pdf

Mr Paz- See forwarded below
---------- Forwarded message ---------
From: **Legal Access Inc** <legalaccessaw@gmail.com>
Date: Sat, Jan 30, 2021 at 1:15 AM
Subject: Fwd: Carolyn Williams Unit 2411
To: a williams <alwms870@gmail.com>

al

On Sat, Jan 30, 2021 at 1:13 AM Legal Access Inc <legalaccessaw@gmail.com> wrote:

---------- Forwarded message ---------
From: **Legal Access Inc** <legalaccessaw@gmail.com>
Date: Sat, Jan 30, 2021 at 1:12 AM
Subject: Carolyn Williams Unit 2411
To: <judy@willmax.net>

Ms Judy- Will you please accept this CDC Declaration and withdraw your threats of eviction

Secondly, have you considered helping my family by providing the letter clearing up our credit so we can move out your apartment and forward?

Kindly,
Ms Williams



**IN THE DISTRICT COURT OF DALLAS**

CAROLYN A WILLIAMS, ET AL

V.                                              DC19-17458

LADERA, ET AL

## CAROLYN A WILLIAMS' DECLARATION

### UNDER PENALTY OF PERJURY FOR THE CENTERS FOR DISEASE CONTROL AND PREVENTION'S TEMPORARY HALT IN EVICTIONS TO PREVENT FURTHER SPREAD OF COVID-19

This declaration is for tenants, lessees, or residents of residential properties who are covered by the CDC's order temporarily halting residential evictions (not including foreclosures on home mortgages) to prevent the further spread of COVID-19. Under the CDC's order you must provide a copy of this declaration to your landlord, owner of the residential property where you live, or other person who has a right to have you evicted or removed from where you live. Each adult listed on the lease, rental agreement, or housing contract should complete this declaration. Unless the CDC order is extended, changed, or ended, the order prevents you from being evicted or removed from where you are living through January 31, 2021. You are still required to pay rent and follow all the other terms of your lease and rules of the place where you live. You may also still be evicted for reasons other than not paying rent or making a housing payment. This declaration is sworn testimony, meaning that you can be prosecuted, go to jail, or pay a fine if you lie, mislead, or omit important information. I certify under penalty of perjury, pursuant to 28 U.S.C. 1746, that the following are true and correct: • I have used best efforts to obtain all available government assistance for rent or housing; • I either expect to earn no more than $99,000 in annual income for Calendar Year 2020 (or no more than $198,000 if filing a joint tax return), was not required to report any income in 2019 to the I.R.S., or received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act; • I am unable to pay my full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses; • I am using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; • If evicted I would likely become homeless, need to move into a homeless shelter, or need to move into a new residence shared by other people who live in close quarters because I have no other available housing options. • I understand that I must still pay rent or make a housing payment, and comply with other obligations that I may have under my tenancy, lease agreement, or similar contract. I further understand that fees, penalties, or interest for not paying rent or making a housing payment on time as required by my tenancy, lease agreement, or similar contract may still be charged or collected. • I further understand that at the end of this temporary halt on evictions on January 31, 2021, my housing provider may require payment in full for all payments not made prior to and during the temporary halt and failure to pay may make me subject to eviction pursuant to State and local laws. I understand that any false or misleading statements or omissions may result in criminal and civil actions for fines, penalties, damages, or imprisonment.

_____ Signature of Declarant Date "Available government assistance" means any governmental rental or housing payment benefits available to the individual or any household member An "extraordinary" medical expense is any unreimbursed medical expense likely to exceed 7.5% of one's adjusted gross income for the year. "Available housing" means any available, unoccupied residential property, or other space for occupancy in any seasonal or temporary housing, that would not violate Federal, State, or local occupancy standards and that would not result in an overall increase of housing cost to you.