# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| AL M WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-154-SDJ-KPJ |
| | § | |
| LADERA APARTMENTS, et al., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S FIRST VERIFIED COMPLAINT AND REQUEST FOR EMERGENCY INJUNCTION

In accordance with this Honorable Court's Order signed March 12, 2021, (Dkt. 16), Defendants Ladera Apartments, Judith McMakin[1], and Daniel Paz (collectively "Defendants") file their Brief in Opposition to First Verified Complaint and Request for Emergency Injunction (the "Emergency Motion") (Dkt. 6) filed by Plaintiff Al M. Williams (the "Plaintiff"), and would respectfully show the Honorable Court the following:

---

[1] Judith McMakin is identified as "Ms. Judy" in the Emergency Motion.

## **TABLE OF CONTENTS**

INTRODUCTION ……………………………………………………………………… 3

STANDARD FOR A PRELIMINARY INJUNCTION ………………………………….. 3-4

ARGUMENT …………………………………………………………………………….. 4-12

    I.       Plaintiff's Request for a Temporary Injunction is Deficient ……………… 4

    II.      Plaintiff lacks standing because he is not a "covered person" under the Eviction Moratorium ……………………………………………………… 4-8

    III.     The Eviction Moratorium is unconstitutional under local precedent ….. 8-9

    IV.     Plaintiff is not entitled to injunctive relief ………………………………. 9-10

    V.      Texas does not currently have a state-wide prohibition on evictions …….10-12

CONCLUSION ………………………………………………………………………….. 12

## INTRODUCTION

Plaintiff is an unauthorized occupant in Defendant Ladera Apartments.  Plaintiff contends to be residing at 3930 Accent Drive, Apartment No. 2411, Dallas, Texas 75287 (the "Leased Premises") despite not being listed as either a tenant or occupant on the Lease for the Leased Premises.  Plaintiff is seeking a preliminary injunction to prevent Defendants from executing a writ of possession and having Plaintiff removed from the Leased Premises.  Plaintiff is seeking such relief based on the CDC Moratorium, which prohibited evictions of "covered persons" for non-payment.

Plaintiff is not entitled to such relief.  As set forth herein, Defendant cannot meet his burden of prove for injunctive relief.  Plaintiff cannot demonstrate a substantial likelihood of success because of deficient pleadings, a lack of standing, and the fact that his claim for protection is based an unconstitutional CDC Moratorium.  For these reasons, Plaintiff's request for a temporary injunction should be denied.

## STANDARD FOR A PRELIMINARY INJUNCTION

As noted by this Honorable Court in its Memorandum Opinion and Order signed March 12, 2021, (Dkt. 15), a party seeking a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood that the movant would suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest.  *See Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 21 (2008).  The burden of proof as to all four requirements rests with the movant.  *See Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

Plaintiff therefore has the burden to prove all four requirements in order to be entitled to a preliminary injunction. For the reasons set forth below, Plaintiff cannot meet that burden and is thus not entitled to a preliminary injunction.

## ARGUMENT

### I. Plaintiff's Request for a Preliminary Injunction is Deficient.

Implicit in the requirement that a plaintiff bears the burden of proving all four requirements necessary for a preliminary requirement is that a plaintiff plead all the requisite elements for a temporary injunction. It is also imperative that a plaintiff plead an ability to post a bond and that a bond actually be posted. *See Fed. R. Civ. P. 65(c).*

This Honorable Court has identified the Emergency Motion (Dkt. 6) as the live pleading in which Plaintiff has requested a preliminary injunction. The Emergency Motion (Dkt. 6) is the pleading in which Defendants are responding. A review of the Emergency Motion reveals the following pleading deficiencies:

>    (i)   Plaintiff has not plead a substantial likelihood of success on the merits;
>
>    (ii)  Plaintiff has not plead that he is willing to post a bond; and
>
>    (iii) No bond has been posted by Plaintiff for the temporary restraining order.

As Plaintiff has failed to plead his request for a preliminary injunction in accordance with *Texas Midstream Gas Servs., LLC* and Fed. R. Civ. P. 65, Plaintiff's request for a preliminary injunction should be denied for pleading deficiencies.

### II. Plaintiff lacks standing because he is not a "covered person" under the Eviction Moratorium.

Before deciding a case on the merits, a federal court must first determine whether a plaintiff has standing to invoke the jurisdiction of a federal court. *See Lujan v. Defenders of Wildlife*,

4

504 U.S. 555, 560 (1992). The standing doctrine requires a plaintiff to show that it: (1) suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *See Id.* In order to satisfy the injury in fact requirement, the plaintiff must show that it has a personal stake in the outcome of the controversy. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). This requires a showing that the injury is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *See Id.* For purposes of standing in the context of the CDC Moratorium, a plaintiff must show it has been affected by the CDC Moratorium. *See Brown v. Azar*, -- F. Supp. 3d --, 2020 WL 6344310 (N.D. Ga. Oct. 29, 2020). In this case, Plaintiff can only have standing to invoke the protections of the CDC Moratorium if he is a "covered person" as defined by the CDC Moratorium.[2]

The CDC Moratorium defines a "covered person" as "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating that:

> (1) The individual has used best efforts to obtain all available government assistance for rent or housing;
>
> (2) The individual either (i) expects to earn no more than $99,000.00 in annual income for Calendar Year 2021 (or no more than $198,000.00 if filing a joint return), (ii) was not required to report any income in 2020 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act;

---

[2] The Honorable Court requested briefing on the issue of whether Plaintiff is "a 'covered person' under the eviction moratorium." (Dkt. 16 at 2).

(3) The individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;

(4) The individual is using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; and

(5) Eviction would likely render the individual homeless – or force the individual to move into and live in close quarters in a new congregate or shared living setting – because the individual has no other available housing options." *See 86 Fed. Reg.* at 8,020 – 8,021.

The CDC Moratorium further defines "evict" and "eviction" as "any action by a landlord, owner of residential property, or other person with a legal right to pursue eviction or possessory action, to remove or cause the removal of a covered person from a residential property. It does not include foreclosure on a home mortgage." *See 86 Fed. Reg.* at 8,021.The CDC Moratorium goes on to define "residential property" as "any property leased for residential property, including any house, building, mobile home or land in a mobile home park, or similar dwelling leased for residential purposes, but shall not include any hotel, motel, or other guest house rented to a temporary guest or seasonal tenant as defined under the laws of the state, territorial, tribal, or local jurisdiction." *See 86 Fed. Reg.* at 8,022. The CDC Moratorium also expressly states under its applicability section that "[t]his Order does not relieve any individual of any obligation to pay rent, make a housing payment, or comply with any other obligation that the individual may have under a tenancy, lease, or similar contract. Nothing in this

Order precludes the charging or collecting of fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract." *See Id.*

When providing guidance on how someone can use the protection of the CDC Moratorium, the CDC stated, "each adult listed on the lease, rental agreement, or housing contract should complete the declaration" and in cases involving individuals filing joint tax returns "it may be appropriate for one member of the residence to provide an executed declaration on behalf of other adult residents party to the lease, rental agreement, or housing contract at issue." *See Centers for Disease Control and Prevention, Frequently Asked Questions* at 3.

Plaintiff is not a "covered person" under the CDC Moratorium. Read in isolation the partial definition "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential, or other person with a legal right to pursue eviction or a possessory action" could be broadly read to apply to any person who claims to be a resident in a residential property who provides the declaration. A complete reading of the definition of a "covered person" and the applicability section of the CDC Moratorium itself cuts against such a broad reading. The required declaration speaks in terms of not being able to pay full rent and using best efforts to pay rent, a resident such as the Plaintiff, who is not a party to the lease, has no such obligation. Moreover, the applicability section speaks in terms of not relieving the individual from an obligation to pay rent or otherwise comply with obligations under a tenancy, lease, or similar contract, which again a non-party such as the Plaintiff would not have. The use of the terms "leased for residential purposes" in the definition of

"residential property" further bolsters the argument that one must be a party to a lease in order to qualify as a "covered person". The CDC's own guidance states each adult on the lease should complete a declaration. When read in its entirety, and not in isolation, the term "resident" cannot be interpreted as broadly as the Plaintiff seeks. Resident for purposes of being a covered person must include a contractual relationship between the parties. No such contractual relationship exists between the Plaintiff and the Defendants. Plaintiff's bare assertion that he resides in the Leased Premises is not enough to make him a "covered person." Not being able to show that he is a "covered person" under the CDC Moratorium, the Plaintiff lacks standing.

### III. The Eviction Moratorium is unconstitutional under local precedent.

Precedent within this district has already determined the CDC Moratorium unconstitutional. *See Terkel v. CDC*, -- F. Supp. 3d – 2021 WL 742877, at *4 (E.D. Tex. Feb. 25, 2021. In <u>Trekel</u>, Judge J. Campbell Barker held that the "federal government's Article I power to regulate interstate commerce and enact laws necessary and proper to that end <u>does not include the power to impose the challenged eviction moratorium [the CDC Eviction Moratorium]</u>." *See Id*. (emphasis added). The constitutional challenge in *Terkel* was whether the federal government had exceeded its authority under the Commerce Clause of the U.S. Constitution.³ *See Id*.

In contrast to that argument, the arguments made in *Skyworks, Ltd. V. CDC*, No. 5:20-cv-2407, 2021 WL 911720 (N.D. Ohio Mar. 10, 2021), *Chambless Enters., LLC*

---

³ As part of its analysis, the Court in Terkel found that "because evictions are not themselves economic activity, their effects cannot be aggregated under the *Wickard* principle. This Honorable Court has asked whether it could define "economic activity" as renting and leasing properties and aggregate that under the Wickard principle. (Dkt. 16 at 2). Whether "economic activity" can be defined in such a way is immaterial to the analysis of the constitutionality of CDC Moratorium because the regulated activity under the CDC Moratorium is evictions, not renting and leasing. The CDC Moratorium does not seek to regulate the renting and leasing of properties.

*v. Redfield*, -- F. Supp. 3d --, 2020 WL 7588849 (W.D. La. Dec. 22, 2020), and *Brown v. Azar*, -- F. Supp. 3d --, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020)[4], was that the CDC acted without statutory and regulatory authority under 42 U.S.C § 264 and 42 C.F.R. § 70.2. That is a different argument then what was made in *Terkel*. While the Ohio District Court reached a different conclusion regarding whether the CDC exceeded its statutory authority then the District Courts in Louisiana and Georgia, their authority is of no value and does not contradict Judge Barker's holding in *Terkel*. *See Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("Cases cannot be read as foreclosing an argument that they never dealt with."). The *Terkel* opinion is therefore the governing precedent in the Eastern District of Texas.

Notwithstanding that crucial distinction, the *Terkel* opinion did not address the issues of executive power and legislative power.[5] No reported cases have addressed the issue of whether the CDC Moratorium constitutes a permissible exercise of executive power. *Skyworks, Ltd., Chambless Enters., LLC,* and *Brown v. Azar*, each addressed the statutory power of the CDC, but not the government's power to exercise its legislative power. The government has exercised legislative power when enacting the CARES Act. The CDC Moratorium, however, is separate and distinct from the CARES Act. It would therefore be Defendants' position that the CDC Moratorium is not an act of legislative power.

---

[4] The Honorable Court specifically requested arguments on these cases. (Dkt. 16 at 2).
[5] The Honorable Court requesting briefing on whether the eviction moratorium was a constitutional exercise of executive power or legislative power.

**IV.     Plaintiff is not entitled to injunctive relief.**

Plaintiff cannot meet his burden for a preliminary injunction.  As noted earlier, a plaintiff has the burden to demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood that the movant would suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest.  *See Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 21 (2008).

Here the Plaintiff has not plead nor demonstrated a substantial likelihood of success on the merits.  Plaintiff cannot demonstrate a likelihood of success because he lacks standing as a "covered person" and the CDC Moratorium on which he seeks relief is deemed unconstitutional in this district.  Moreover, the State of Texas, as set forth below, has already provided a means of recourse.

**V.     Texas does not currently have a state-wide prohibition on evictions.**

From the onset of the COVID-19 pandemic, the Supreme Court of Texas has issued multiple emergency orders addressing state-wide eviction proceedings.[6]  Neither the state legislature nor the executive branch has enacted any state-wide eviction prohibition.  The only state-wide guidance has come from the Supreme Court of Texas.

Beginning with the Fourth Emergency Order issued March 19, 2020, the Supreme Court of Texas initially placed a moratorium on state-wide eviction proceedings. Per the Fourth Emergency Order, all eviction proceedings were tolled until after April 19,

---

[6] The Honorable Court has requested briefing on the issues of "[w]hat evictions, if any, exist under the Emergency Orders?" and "[w]hat eviction prohibitions, if any, have been enacted from the Texas state legislative and executive branches?" (Dkt. 16 at 2).

2020, and all unexecuted writs of possession could not be executed until after April 26, 2020. *See the Fourth Emergency Order*. The Supreme Court of Texas thereafter issued the Ninth Emergency Order on April 6, 2020, and the Twelfth Emergency Order on April 27, 2020, which ultimately extended the tolling date for state-wide eviction proceedings until after May 18, 2020, and the date for executing writs of possession until after May 25, 2020. *See the Ninth and Twelfth Emergency Order* The Twelfth Emergency Order expired on June 1, 2020. *See the Twelfth Emergency Order.*

With the Fifteenth Emergency Order, the Supreme Court of Texas lifted the state-wide eviction moratorium and promulgated pleading requirements and procedures to be followed by courts for evictions filed on March 27, 2020, or after. *See the Fifteenth Emergency Order* The Supreme Court of Texas has subsequently modified those pleading requirements and procedures as the COVID-19 pandemic has continued. Eviction proceedings are currently being conducted in accordance with the Thirty-Fourth Emergency Order and the Thirty-Fifth Emergency Order. Neither of these two emergency orders, however, impose a state-wide prohibition on evictions.

The Thirty-Fourth Emergency Order and the Thirty-Fifth Emergency Order require that in addition to the pleading requirements under Texas Rule of Civil Procedure 510.3(a)(2), that the plaintiff make certain disclosures as to whether: (1) the premises are a "covered dwelling" under Section 4024 of the CARES Act; (2) whether the plaintiff has provided a 30 day notice to vacate as required by Section 4024(c) of the CARES Act; (3) whether the defendant has provided the plaintiff with a CDC declaration; (4)whether the premises are a property securing an FHA-insured Single Family mortgage; and (5) state that the plaintiff has reviewed information about the

Texas Eviction Diversion Program. *See the Thirty-Fourth and Thirty-Fifth Emergency Order.*

The Thirty-Fourth Emergency Order goes on to establish a procedure in which a plaintiff may contests the defendant's CDC declaration. The procedure set forth is that a plaintiff may contest to the CDC declaration and that the judge must hold a hearing to determine whether the eviction should proceed. And if the judge determines that the eviction should proceed, the Thirty-Fourth Emergency Order requires an order be signed stating the reasons for why the eviction should proceed and the procedures that will apply. *See the Thirty-Fourth Emergency Order*

Based on emergency orders from the Supreme Court of Texas, there is no current state-wide prohibitions on evictions. Evictions are permitted to proceed in Texas so long as they comply with the pleading requirements and procedures of the Thirty-Fourth Emergency Order and the Thirty-Fifth Emergency Order. The legislative and executive branches have not imposed any eviction prohibitions.

## **CONCLUSION**

For all the reasons stated herein, Plaintiff's request for a preliminary injunction should be denied.

Respectfully submitted,

THE PAZ LAW FIRM, PLLC

By: */s/ Daniel Paz*
      Daniel Paz
      State Bar No. 24027722
      daniel@thepazlawfirm.com

14330 Midway Rd., Suite 214
Dallas, Texas 75244
Telephone: (214) 812-9061
Facsimile: (214) 812-9420
Attorney for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that on March 17, 2021, a true and correct copy of the foregoing was emailed to:

Al M Williams
3930 Accent Drive
Apartment No. 2411
Dallas, Texas 75287
**legalaccessaw@gmail.com**

                  */s/ Daniel Paz*
                  Daniel Paz