**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **AL M. WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-154-SDJ-KPJ** |
| | § | |
| **LADERA APARTMENTS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court is Plaintiff Al M. Williams' ("Mr. Williams") Request for Emergency Injunction (the "Emergency Motion") (Dkt. 6), wherein he seeks both a temporary restraining order ("TRO") and a preliminary injunction against Defendants Ladera Apartments ("Ladera Apartments"), Judy McMakin ("Ms. McMakin"), and Daniel Paz ("Mr. Paz") (collectively, "Defendants"). Pursuant to 28 U.S.C. § 636(c), the parties consented to have the undersigned rule on Mr. Williams' prayer for a TRO and preliminary injunction with final authority. *See* Minute Entry for March 12, 2021. The Court then entered a TRO, which, with the parties' consent, was subsequently extended and modified. *See* Dkts. 15, 24, 26. The Court ordered the parties to file expedited briefing on the preliminary injunction, which the parties submitted. *See* Dkts. 16, 17, 20. Beginning on March 24 and continuing on April 20, 2021, the Court held an evidentiary hearing on the preliminary injunction. *See* Dkts. 23, 34.

Having considered the arguments, evidence, and applicable authorities, the Court finds that Mr. Williams' Emergency Motion (Dkt. 6) is hereby **DENIED**.

# I.  BACKGROUND

## A.  PROCEEDINGS IN STATE COURT

On September 3, 2015, Mr. Williams' wife, Carolyn Williams ("Mrs. Williams"), signed an Apartment Lease Contract (the "Lease") with Ladera Apartments to lease an apartment unit (the "Apartment"). *See* Dkt. 12 at 8. Mrs. Williams is the only tenant named in the Lease, and the Lease specifically provides the Apartment will only be occupied by Mrs. Williams.[1] *See id.* Mr. Williams alleges that he, along with Mrs. Williams and other family members, have lived at the Apartment since the Lease was executed. *See* Dkt. 31 at 3. Mr. Williams asserts that, at some point, he stopped living at the Apartment to live with a girlfriend in McKinney, Texas. *See* Dkt. 23. Mr. Williams represents that on or around March 2020, he moved back into the Apartment, where he allegedly still resides. *See* Dkts. 23, 34.

On January 8, 2020, before Mr. Williams moved back into the Apartment, Ladera Apartments delivered to Mrs. Williams a notice to vacate and demand for possession, as Mrs. Williams was behind on her rent by $737.03. *See* Defs. Ex. 1. Eight days later, Ladera Apartments initiated eviction proceedings against Mrs. Williams in the Justice Court of Denton County, Texas, Precinct 6. *Id.* The litigation in state court unfolded over the next year, with the Justice Court granting Ladera Apartments a judgment for eviction and Mrs. Williams losing on appeal in Denton County Court at Law No. 2 and the Court of Appeals, Second Appellate District of Texas at Fort Worth. *See* Defs. Exs. 2, 3, 5, 6. After the Fort Worth Court of Appeals dismissed her appeal, Mrs. Williams' case was remanded to the County Court for further proceedings. *See* Dkt. 23 at 19; Defs. Ex. 6.

---

[1] Mrs. Williams is not a party in this case and has never made an appearance in this matter.

On January 25, 2021, the County Court awarded Ladera Apartments a writ of possession. *See* Dkt. 12 at 19. The writ of possession entitles Ladera Apartments to remove not only Mrs. Williams, but also "all persons claiming under" her. *See Ladera v. Carolyn Williams and All Other Occupants*, No. CV-2020-00600-JP, Writ of Possession (Denton Cnty. Ct. at Law No. 2 Jan. 25, 2021). To halt her impending eviction, Mrs. Williams sent two "CDC Declarations" on January 29 and 30, 2021, to Ms. McMakin, Vice President of Willmax Capital Management, the property management company for Ladera Apartments, and Mr. Paz, Ladera Apartments' attorney. *See* Dkt. 12 at 1, n.1, 18; Defs. Ex. 7, 8. The CDC Declarations state:

(1) Mrs. Williams has used her best efforts to obtain all government assistance to pay rent;

(2) Mrs. Williams either expected to earn no more than $99,000 in 2020, was not required to file a federal tax return for 2019, or received an economic impact payment under the CARES Act;

(3) Mrs. Williams is unable to pay her full rent due to a substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses;

(4) Mrs. Williams has made her best efforts to make timely partial payments that are as close to the full amount as her circumstances permit, taking into account other nondiscretionary expenses;

(5) Mrs. Williams understands her obligation to pay rent does not cease while the global COVID-19 pandemic continues, and Ladera Apartments may continue to charge fees, penalties, and interest for nonpayment of rent;

(6) Mrs. Williams understands the CDC's temporary halt on evictions will not protect her from eviction proceedings once the halt is lifted; and

(7) If evicted, Mrs. Williams would likely become homeless, need to move to a homeless shelter, or need to move into a new residence shared by other people who live in close quarters because she has no other available housing options.

*See* Defs. Exs. 7, 8.

On February 2, 2021, Ladera Apartments filed a motion to execute its writ of possession in the County Court. Dkt. 12 at 19; Dkt. 23. On March 11, 2021, the County Court held a hearing on the motion. *See* Dkt. 23; Defs. Ex. 9. During the hearing, Ladera Apartments contested the sufficiency of Mrs. Williams' CDC Declarations on three grounds: (1) Mrs. Williams had not made her best effort to obtain government assistance; (2) Mrs. Williams had not made her best effort to make timely partial payments as her circumstances permitted; and (3) it was not likely Mrs. Williams would become homeless, need to move to a homeless shelter, or need to move into a new residence shared by other people because she has no other available housing options. *See* Dkt. 34.

During the County Court's proceedings, Mrs. Williams represented she was in the process of obtaining a kidney transplant and intended to go to wherever she needed to obtain medical assistance, be it in Arkansas, Mississippi, or Texas. *See id.*

Upon the hearing's conclusion, the County Court orally stated its intention to rule in Ladera Apartments' favor and subsequently issue a written order. *See* Dkt. 23. On April 7, 2021, the County Court entered a written order granting Ladera Apartments' motion for execution of the writ of possession, finding that, despite the representations made in Mrs. Williams' CDC Declarations, Mrs. Williams was unlikely to be homeless if evicted. *See* Defs. Ex. 9. The County Court did not make findings of fact with respect to Ladera Apartments' other two challenges to Mrs. Williams' CDC Declarations—i.e., Ladera Apartment's contention that Mrs. Williams did not use her best efforts to obtain government assistance and Mrs. Williams did not use her best efforts to make partial payments toward rent. *Id.*

## B. PROCEEDINGS IN FEDERAL COURT

On February 23, 2021, while Ladera Apartments' motion for execution of writ of possession was pending in the County Court, Mr. Williams filed an Original Complaint (Dkt. 1)

against Ladera Apartments, Ms. McMakin, and Mr. Paz in the Northern District of Texas, Dallas Division, alleging Defendants' eviction efforts violated the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") and the Centers for Disease Control and Prevention's ("CDC") eviction moratorium. *See id.* That same day, Mr. Williams filed an Amended Complaint (Dkt. 5), which added claims arising under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Americans with Disabilities Act ("ADA"). In his Amended Complaint, Mr. Williams prays for $150,000 in compensatory damages, $500,000 in punitive damages, $200,000 in fines, injunctive relief, class action certification, attorney's fees, and costs. *See id.* at 5. The Amended Complaint also contains a Request for Emergency Injunction (the "Emergency Motion"), which was construed as a motion for a TRO and preliminary injunction. *See* Dkt. 5 at 5; Dkt. 6. The Northern District of Texas transferred the matter to this Court. *See* Dkts. 4, 7.[2]

The Court held two telephonic hearings regarding Mr. Williams' prayer for a TRO, during which the parties consented to have the undersigned rule on the TRO and preliminary injunction with final authority. *See* Minute Entries for March 11 and 12, 2021. On March 12, 2021, the Court granted the Emergency Motion (Dkt. 6) in part, entering a TRO enjoining Defendants from executing their writ of possession for fourteen days. *See* Dkt. 15. The Court then ordered the parties to file expedited briefing regarding the preliminary injunction, which the Court received. *See* Dkts. 16, 17, 20.

On March 24, 2021, the Court held an evidentiary hearing on the preliminary injunction. *See* Dkt. 23. During the hearing, Mr. Williams offered to provide sworn testimony. *See id.* However, upon learning he would be subject to cross-examination, Mr. Williams rescinded his

---

[2] Ladera Apartments is located in zip code 75287, which lies in Collin County, Texas. Collin County is in the Eastern District of Texas, Sherman Division.

offer to testify. *See id.* After receiving the parties' evidence and hearing arguments, the Court took a recess. *See* Dkts. 23, 25. When the Court reconvened, the Court noted that the CDC's eviction moratorium was set to expire in a week, and the matter could possibly be rendered moot. *See* Dkt. 24. Based on the moratorium's imminent expiration, the parties jointly consented to the Court's extension and modification of the TRO. *See* Dkt. 24. The modified TRO enjoined Defendants from contacting a constable or sheriff to schedule, organize, and execute Mr. Williams' removal from Ladera Apartments, but allowed Ladera Apartments to finalize its proceedings in the County Court. *See* Dkt. 26. In its order extending and modifying the TRO, the Court ordered the parties to notify the Court once the County Court issued its written findings on Ladera Apartment's motion to execute its writ of possession or when the CDC eviction moratorium expired, whichever was sooner. *See* Dkt. 26. On March 31, 2021, the CDC extended the eviction moratorium to June 30, 2021. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731 (Mar. 31, 2021). On April 14, 2021, Defendants timely notified the Court of the County Court's written findings issued on April 7, 2021, and on April 20, 2021, the Court resumed the evidentiary hearing on the preliminary injunction request. *See* Dkts. 26, 28, 34.

During the April 20, 2021, evidentiary hearing, Defendants admitted into evidence Mr. Williams' September 10, 2019, application to reside at the Apartment. *See* Defs. Ex. 13. On the application, Mr. Williams reported he had been convicted or received probation for a felony or sex crime. *Id.* In the section where Mr. Williams was to indicate the year, location, and type of felony or sex crime for which he was convicted, Mr. Williams wrote only "2001." *Id.* Ladera Apartments' background check reported Mr. Williams as having eleven felony convictions. *See* Defs. Ex. 14 at 2–5. The background check also reported that 66.67% of all tradelines on Mr. Williams' credit report were "derogatory." *See id.* at 1–2, 6–7. Ladera Apartments subsequently denied Mr.

Williams' application for residency. *See* Dkt. 34. At the hearing, Defendants stated the primary

basis for rejecting Mr. Williams' tenant application was his criminal history, as Ladera Apartments

found that Mr. Williams would pose a danger to other residents at Ladera Apartments. *See id.*

Based on public records, the following table reflects the Court's best knowledge regarding the

charges brought against Mr. Williams and their dispositions.[3]

| Year | Charge | Jurisdiction | Disposition |
|------|--------|--------------|-------------|
| 1989 | Rape | Phillips County, AR | |
| 1992 | Battery | Phillips County, AR | |
| 1992 | Possession of a controlled substance | Phillips County, AR | |
| 1994 | Resisting arrest | Phillips County, AR | |
| 1994 | Fleeing | Phillips County, AR | |
| 1994 | Theft | Phillips County, AR | |
| 1994 | Unauthorized use of a motor vehicle | Phillips County, AR | |
| 1995 | Robbery | Phillips County, AR | |
| 1995 | Terroristic threatening | Phillips County, AR | Convicted |
| 1998 | Robbery | Phillips County, AR | |
| 1998 | Resisting arrest | Phillips County, AR | |
| 1999 | Aggravated assault | Craighead County, AR | Convicted |
| 1999 | Criminal mischief [4] | Craighead County, AR | Convicted |
| 1999 | Possession of drug paraphernalia | Craighead County, AR | Convicted |
| 1999 | Disorderly conduct | Craighead County, AR | |
| 2001 | Attempted murder (second degree) | Shelby County, TN | Convicted |
| 2002 | Failure to appear ("bail jump") | Shelby County, TN | |
| 2002 | Failure to appear | Shelby County, TN | |
| 2002 | Failure to appear | Shelby County, TN | |
| 2008 | Possession with intent to deliver | Phillips County, AR | |

---

[3] This table is based on the following: Defs. Exs. 10, 11, 14; *State v. Williams*, No. CR-95-441, Prosecutor's Rpt. (Ark. Cir. Ct. Oct. 11, 1999) (alleging Mr. Williams robbed an individual, threatened to kill him, and stole twenty dollars), Final J. (Ark. Cir. Ct. June 12, 1996) (reporting Mr. Williams pled guilty to terroristic threatening in the first degree); *State v. Williams*, No. 99-125, Am. Final J. (Ark. Cir. Ct. Jan. 23, 2001) (sentencing Mr. Williams to 96 months' imprisonment for aggravated assault, criminal mischief, and possession of drug paraphernalia); *State v. Williams*, No. 39CR-11-48, Dkt. Text (Ark. Cir. Ct. July 18, 2012) (reporting *nolle prosequi* for theft of property); *State v. Williams*, No. LRCR-13-2239, Dkt. Text (Ark. Crim. Dist. Ct. Apr. 22, 2013) (pending public intoxication charge); *State v. Williams*, No. LRTR-13-6464, Dkt. Text (Ark. Crim. Dist. Ct. Apr. 23, 2013) (reporting conviction for driving while license suspended or revoked, failure to present proof of insurance, refusal to submit to testing, and driving while intoxicated); *State v. Williams*, No. LRCR-10-6637, Dkt. Text (Ark. Crim. Dist. Ct. Aug. 15, 2015) (reporting Mr. Williams pled guilty to failure to appear while on violation and public intoxication). Additionally, a prosecutor's report states Mr. Williams was charged in Jonesboro, Arkansas, with assisting a prisoner's escape, though the date of the charge is not specified. *See State v. Williams*, No. CR 95-441, Prosecutor's Rpt. (Ark. Dist. Ct. Oct. 11, 1999). A blank entry under "Disposition" means the Court is currently unaware of the case's result.

[4] Under Arkansas law, criminal mischief is defined as destroying or causing damage to the property of another without legal justification, for the purpose of collecting insurance money, or for the purpose of causing substantial inconvenience to another person. ARK. CODE ANN. §§ 5-38-203, 5-38-204.

7

| 2010 | Theft of property | Phillips County, AR | Nolle prosequi |
| 2010 | Public intoxication | Pulaski County, AR | Convicted |
| 2010 | Failure to appear while on violation | Pulaski County, AR | Convicted |
| 2013 | Public intoxication | Pulaski County, AR | Pending |
| 2013 | Driving while license suspended | Pulaski County, AR | Convicted |
| 2013 | Failure to present proof of insurance | Pulaski County, AR | Convicted |
| 2013 | Refusal to submit to test | Pulaski County, AR | Convicted |
| 2013 | Driving while intoxicated | Pulaski County, AR | Convicted |
| 2016 | Assault of family or household member | Denton County, TX | Set for trial |

Defendants also introduced into evidence a true bill of indictment issued from the 367th Judicial District Court of Denton County, Texas on May 27, 2016. *See* Defs. Ex. 10. In the indictment, a state grand jury charged Mr. Williams with assault of a family or household member. *See id.* The indictment alleges Mr. Williams intentionally, knowingly, or recklessly caused an individual named Carla Ward bodily injury by "impeding the normal breathing or circulation of the blood . . . by applying pressure to the throat or neck or by blocking the nose or mouth of the said Carla Ward with the defendant's hand." *Id.* Mr. Williams' criminal case is currently set to be tried before a jury on July 26, 2021.

## II.   <u>LEGAL STANDARD</u>

Injunctive relief is an extraordinary remedy requiring the applicant to unequivocally show the need for its issuance. *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). The Fifth Circuit has made clear that preliminary injunctions constitute "extraordinary and drastic remed[ies]," which are "not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see also Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999) ("Temporary restraining orders and preliminary injunctions are extraordinary relief and rarely issued.").

To obtain such relief, a party seeking a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor, and (4) that an injunction is in the public interest. *See Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). The movant bears the burden to prove all four requirements to be entitled to injunctive relief. *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016 (1980). The denial of a preliminary injunction will be upheld where the movant has failed to sufficiently establish any one of the four criteria. *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990).

### III.   RELEVANT STATUTORY AND REGULATORY PROVISIONS

Before addressing Mr. Williams' entitlement to a preliminary injunction, the Court reviews the various statutes and agency orders related to the CDC's nationwide eviction moratorium.

#### A.  THE CARES ACT

In the midst of the global COVID-19 pandemic, on March 27, 2020, then President Trump signed the CARES Act into law. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020). Among its numerous provisions, the CARES Act instituted a 120-day prohibition on the initiation of eviction proceedings for certain "covered dwellings." *Id.* § 4024, 134 Stat. at 492–53. Ultimately, Congress did not renew the Act, and its eviction moratorium for rental properties ended on July 27, 2020.

#### B.  THE FIRST CDC MORATORIUM

On September 4, 2020, approximately one month after the CARES Act's eviction moratorium for rental properties lapsed, the CDC, a division of the United States Department of Health and Human Services ("HHS"), entered an agency order temporarily halting residential

evictions. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020) (the "First CDC Moratorium"). Issued under Section 361 of the Public Health Service Act ("PHSA"), 42 U.S.C. § 264, and 42 C.F.R. § 70.2, the First CDC Moratorium protects "covered person[s]," who are defined as "any tenant, lessee, or resident of a residential property who provides to their landlord, or the owner of the residential property, or other person with a legal right to pursue eviction or possessory action . . . ." *Id.* at 55,293. To invoke the First CDC Moratorium's protections, a covered person must furnish a declaration, through which the covered person must testify to meeting certain criteria. *Id.* This First CDC Moratorium was set to expire on December 31, 2020. *Id.* at 55,292.

### C.  THE CONSOLIDATED APPROPRIATIONS ACT

On December 27, 2020, four days before the First CDC Moratorium was set to expire, then President Trump signed the Consolidated Appropriations Act (the "CAA"), which states, "The order issued by the Centers for Disease Control and Prevention under Section 361 of the Public Health Service Act (42 U.S.C. 264) . . . is extended through January 31, 2021, notwithstanding the effective dates specified in such Order." Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078–79 (2020).

### D.  THE SECOND CDC MORATORIUM

Following the CAA, the CDC issued an agency order, whereby it extended the CDC's eviction moratorium until March 31, 2021. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8,020 (Feb. 3, 2021) (the "Second CDC Moratorium"). The Second CDC Moratorium cites the same statutory and regulatory provisions as its authority, and its content is substantially similar to that of the First CDC Moratorium. *See id.*

10

### E.  THE AMERICAN RESCUE PLAN ACT

On March 11, 2021, Congress passed the American Rescue Plan Act (the "Rescue Act"), an economic stimulus bill aimed at assisting the country's recovery from the devastating effects of the global pandemic. *See* Pub. L. 117-2, 135 Stat. 4 (2021). Though the Rescue Act contains numerous provisions to address the pandemic, it did not extend the Second CDC Moratorium, ratify it, or prospectively ratify subsequent extensions of the agency order.

### F.  THE THIRD CDC EVICTION MORATORIUM

On March 31, 2021, the day the Second CDC Moratorium was set to expire, the CDC issued yet another agency order, whereby it extended the eviction moratorium to June 30, 2021. *See* 86 Fed. Reg. 16,731 (the "Third CDC Moratorium"). The Third CDC Moratorium defines a "covered person" in the same manner as the First and Second CDC Moratoria. *See* 85 Fed. Reg. 55,292; 86 Fed. Reg. 8,020; 86 Fed. Reg. 16,731. It further provides that individuals invoking the Third CDC Moratorium's protections must furnish a declaration testifying that:

> (1) The individual has used his or her best efforts to obtain government assistance to make rental payments;
>
> (2) The individual either earned no more than $99,000 in 2020, or expects to earn no more than $99,000 in 2021, was not required to pay income taxes in 2020, or was qualified for a stimulus check under the CARES Act, the Rescue Act, or other similar, federally authorized payments;
>
> (3) The individual is unable to pay full rent due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;
>
> (4) The individual is using his or her best efforts to make partial payments; and
>
> (5) The individual is likely to experience homelessness or need to move into a congregate or shared residence if evicted.

86 Fed. Reg. at 16,732 & n.5.

The Third CDC Moratorium also states: "Nothing in this Order precludes evictions based on a tenant, lessee, or resident: (1) Engaging in criminal activity while on the premises; (2) threatening the health or safety of other residents; (3) damaging or posing an immediate and significant risk of damage to property; (4) violating any applicable building code, health ordinance, or similar regulation relating to health and safety; or (5) violating any other contractual obligation, other than the timely payment of rent or similar housing-related payment (including non-payment or late payment of fees, penalties, or interest)." *Id.* at 16,736.

## IV.  ANALYSIS

The Court first addresses whether Mr. Williams has standing to sue. The Court concludes that Mr. Williams has Article III standing; however, he lacks prudential standing, as Mr. Williams is not a "covered person" within the meaning of the Third CDC Moratorium. With respect to his other claims, Mr. Williams has not established he is substantially likely to succeed on the merits. Because he has not met this first prong of the preliminary injunction analysis, the Court need not address the other three prongs for granting a preliminary injunction. *See Barton v. Huerta*, 613 F. App'x 426, 427 (5th Cir. 2015) ("[F]ailure to succeed on any one of the elements results in denial of injunctive relief.").

### A.  STANDING

Defendants argue Mr. Williams lacks standing to sue because he, as an unauthorized occupant with no obligation to pay rent, is not a "covered person" under the CDC Moratoria. *See* Dkt. 17 at 7–8; Dkt. 23; Dkt. 34.[5] Though Defendants cite the elements of Article III standing in their brief, Defendants' arguments regarding whether Mr. Williams is a "covered person" actually contest Mr. Williams' prudential standing.

---

[5] When this case first came before the Court, the Second CDC Moratorium was in effect and had not yet expired. However, the Third CDC Moratorium is currently the live agency order in effect.

To clarify, there are two strains of standing: Article III standing and prudential standing. Article III standing, also called constitutional standing, "enforces the Constitution's case-or-controversy requirement." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (citations omitted). Prudential standing, also called statutory standing, embodies judicially self-imposed limits on the exercise of federal jurisdiction. *Id.* "Thus, unlike the requirements of Article III standing, prudential standing requirements are not strictly required by Article III of the Constitution." *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Warth v. Seldin*, 422 U.S. 490, 500–01 (1975)).

### 1. Article III Standing

Article III's "case or controversy" requirement underpins the doctrine of constitutional standing. *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Confirming a plaintiff has Article III standing ensures that federal courts do not issue mere "advisory opinions" or "hypothetical judgments." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). Accordingly, "to satisfy Article III's standing requirement, a plaintiff must demonstrate (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and is (3) likely to be redressed by the requested relief." *Texas v. Rettig*, 968 F.3d 402, 411 (5th Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of establishing these elements. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Here, Mr. Williams has shown he has Article III standing.

#### a. Injury in Fact

To establish an injury in fact, a threatened future injury must be: "potentially suffered by the plaintiff, not someone else; concrete and particularized, not abstract; and actual or imminent, not conjectural or hypothetical." *Id.* at 720–21 (cleaned up). The imminence requirement for a

threatened or future injury is satisfied only if there is at least a substantial risk that injury will occur. *Texas Voters All. v. Dallas Cnty.*, No. 4:20-cv-775, 2020 WL 6146248, at *4 (E.D. Tex. Oct. 20, 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

The parties do not dispute that Ladera Apartments secured a writ of possession, and, on April 7, 2021, the County Court granted Ladera Apartments' motion to execute the writ for possession. *See* Defs. Ex. 9. Thus, to effectuate the eviction, all that remains is contacting the Denton County Constable to schedule Mr. Williams' removal from the Apartment. *See* Dkt. 24; Defs. Ex. 9. Accordingly, Mr. Williams faces a real and immediate threat of removal from the Apartment. Mr. Williams has alleged an injury in fact.

### b. *Fairly Traceable*

Fair traceability requires a "causal connection between the injury and the conduct complained of . . . ." *Lujan*, 504 U.S. at 560. Put another way, the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* at 560–61. The traceability element asks whether the line of causation between the injury and the defendant's conduct is "too attenuated." *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986). Given that Defendants seek to remove Mr. Williams from the Apartment, there is an obvious causal connection between Defendants' challenged actions and Mr. Williams' alleged injury of eviction. *See* Dkt. 12 at 3–4, 18; Dkt. 17 at 3; *Hanson*, 800 F.2d at 1385. Mr. Williams has shown his alleged injury is fairly traceable to Defendants.

### c. *Redressability*

Finally, Mr. Williams has satisfied the redressability element. To show an injury is redressable, the plaintiff must demonstrate a favorable decision is likely to redress the alleged injury. *Friends of the Earth*, 528 U.S. at 181. The relief sought need only lessen the injury, rather

than completely cure it. *See Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014). Here, a favorable decision would provide Mr. Williams monetary damages and enjoin Defendants from removing Mr. Williams so long as the CDC's eviction moratorium remains in effect. *See* Dkt. 6 at 5. This would clearly lessen Mr. Williams' alleged injury.

Because Mr. Williams has alleged an injury in fact that is fairly traceable to the challenged conduct of Defendants, and the relief sought would redress Mr. Williams' alleged injuries, he has Article III standing to bring this lawsuit. *See Lujan*, 504 U.S. at 560–61.

### 2. Prudential Standing

Prudential standing includes at least three broad principles: (1) the general prohibition on a litigant's raising of another person's legal rights; (2) the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches; and (3) the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *In re Emergency Room Mobile Servs., LLC*, 529 B.R. 676, 685 (N.D. Tex. 2015). "The [United States Supreme Court] has described the 'zone of interests' test as denying a right of review 'if the plaintiff's interest are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* at 802 (quoting *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987)).

Here, Defendants argue Mr. Williams is not a "covered person" under the Third CDC Moratorium, and accordingly, he lacks standing to assert a claim thereunder. *See* Dkt. 17 at 5. The Court construes Defendants' argument as challenging Mr. Williams' Amended Complaint under the "zone of interests" inquiry, which requires parsing and interpreting the Third CDC Moratorium's text. Having reviewed the agency order's text and the particular facts of this case,

the Court concludes Mr. Williams falls outside the "zone of interests" created by the Third CDC Moratorium.

When interpreting a regulation or agency order, a court must first determine whether the text is itself "genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). To determine whether a regulation is genuinely ambiguous, "a court must exhaust all the traditional tools of construction" and carefully consider the text, structure, history, and purpose of the regulation. *Id.* (quoting *Chevron, USA, Inc. v. Natural Res. Def. Counsel*, 467 U.S. 837, 843 n.9 (1984)). If the text is not genuinely ambiguous, this ends the inquiry, and a court applies the unambiguous meaning of the regulation. *Id.*

If the regulation is genuinely ambiguous, a court must look to whether the agency has advanced an interpretation of the regulation that warrants either *Auer* or *Skidmore* deference. *Id.* at 2414. *Auer* deference, sometimes called *Seminole Rock* deference, requires a court to defer to reasonable agency interpretations of their own regulations, as agencies often promulgate such rules based on their unique scientific and technical expertise. *See id.* at 2011–14. An agency interpretation that is plainly erroneous or inconsistent with the regulation is not reasonable and does not warrant *Auer* deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). *Skidmore* deference, on the other hand, is less deferential. *See Kisor*, 139 S. Ct. at 2445–46 (Gorsuch, J., concurring). "Courts should only afford *Skidmore* deference to an agency interpretation 'to the extent it has the power to persuade.'" *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 535 (E.D. Pa. 2019) (quoting *Kisor*, 139 S. Ct. at 2414)).

Here, the Court finds the Third CDC Moratorium is not genuinely ambiguous. As such, the Court need not refer to any interpretative materials created by the CDC or apply the doctrines of *Auer* deference and *Skidmore* deference. *See Kisor*, 139 S. Ct. at 2414–15.

16

The Third CDC Moratorium defines a covered person as "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, [and furnishes a CDC declaration]." *See* 86 Fed. Reg. at 16,731–32. Among other things, an individual furnishing a CDC declaration must make certain representations regarding attempts to secure assistance with paying rent and making best efforts to pay partial rent. *See id.* In some circumstances, an individual can furnish a declaration on behalf of other adult "residents" named on the lease. *See id.* at 16,736.

The Third CDC Moratorium further provides it "does not prohibit evictions for engaging in criminal activity while on the leased premises," and "covered persons may not be evicted *on the sole basis* that they are alleged to have committed the crime of trespass (or similar state-law offense) where the underlying activity is a covered person remaining in a residential property despite nonpayment of rent." *See id.* at 16,735 (emphasis added). Under Texas law, a person commits criminal trespass if he or she enters or remains on property of another without effective consent and he or she (1) had notice the entry was forbidden or (2) received notice to depart but failed to do so. *See* TEX. PENAL CODE § 30.05(a); *United States v. Bailey*, 111 F.3d 1229, 1238 (5th Cir. 1997).

Because Mr. Williams is not a tenant or a lessee of the Apartment, he must establish he is either a resident who furnished a CDC Declaration or an adult resident who is a party to the lease. *See id.*; Dkt. 12 at 8.

To the Court's best knowledge, no court has decided how capaciously "resident" is to be understood. However, regardless of how expansive "resident" can be construed, an individual must nevertheless establish he or she is a "covered person." *See* 86 Fed. Reg. at 16,731. The tools of construction counsel that "residents" who are "covered persons" cannot be interpreted so broadly

as to encompass applicants who, like Mr. Williams, have expressly been denied occupancy as a tenant on the basis of the applicant's extensive criminal history, but nevertheless occupy an apartment unit surreptitiously, without authorization.

As an initial matter, the Court must interpret "resident" such that "tenant" and "lessee" are not rendered redundant or "mere surplusage." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668–69 (2007). Accordingly, "resident" cannot be read to mean an individual who is obligated to make rental payments directly to a landlord. If the Court stopped here, Mr. Williams could appear to be a covered person.

However, the Court must consider the Third CDC Moratorium's overall text, structure, and purpose. *See Kisor*, 139 S. Ct. at 2415. A "resident" can become a "covered person" by declaring he or she is making best efforts to seek government assistance for rental payments, is making best efforts to make partial payments, and is unable to make full payments due to substantial hardship. *See* 86 Fed. Reg. at 16,732–33. Accordingly, the text inherently applies only to those "residents" with an actual financial obligation to pay rent. Thus, "resident," in this sense, must be understood to encompass individuals with an obligation to pay rent, but no obligation to a landlord, such as subtenants and sublessees. Based on the evidence, the Court is not aware of any subtenant or sublessee relationship between Mr. Williams and Mrs. Williams. Mr. Williams cannot be understood as a "covered person" under this provision.

The Third CDC Moratorium also states, "In some circumstances, it may be appropriate for one member of the residence to provide an executed declaration on behalf of the other adult residents *who are party to the lease*, rental agreement or housing contract." 86 Fed. Reg. at 17,736 (emphasis added). This text suggests that for adults who are named as occupants in an instrument, but have no obligation to pay rent, they are nevertheless "covered persons" despite not furnishing

18

a declaration, as the paying tenant's declaration will suffice. *See id.* This provision was likely drafted to cover situations such as elderly or disabled relatives who do not contribute to the household financially but are named as an authorized occupant, and such a reading comports with the overall purpose of the Third CDC Moratorium. As Mr. Williams is not named on the Lease— and, in fact, was expressly denied residency by Ladera Apartments—he cannot qualify as a "covered person" under this provision.

Without another provision under which Mr. Williams could qualify as a "covered person," the Court concludes he is not a "covered person" within the meaning of the Third CDC Moratorium. The agency order's text is not genuinely ambiguous as to Mr. Williams, and Mr. Williams lacks prudential standing to bring suit under the Third CDC Moratorium.

Ladera Apartments' ability to press criminal charges further underscores Mr. Williams' lack of prudential standing. On September 13, 2019, a background check informed Ladera Apartments that Mr. Williams had eleven felony convictions and multiple negative tradelines on his credit report. *See* Defs. Ex. 14. One conviction was for attempted murder in the second degree. *See* Defs. Exs. 12, 14. Ladera Apartments subsequently denied Mr. Williams' application to live at the Apartment. *See* Dkt. 34. Thus, Mr. Williams had actual notice that his residency at Ladera Apartments was forbidden; nevertheless, at some point, he moved into the Apartment. These facts establish a *prima facie* case for criminal trespass, and Ladera Apartments is entitled to call local law enforcement to issue a criminal-trespass warning. *See Thomas v. State*, 444 S.W.3d 4, 6 (Tex. Crim. App. 2014) (noting apartment could seek criminal-trespass warning for a registered sex offender occupying premises without authorization). Removing Mr. Williams on this basis would not be a removal based solely on Mr. Williams' nonpayment of rent. *See* 86 Fed. Reg. at 16,735. Rather, such a removal would be on the basis that, pre-pandemic, Mr. Williams was expressly

denied residency at Ladera Apartments, as Ladera Apartments found that he posed a danger to other residents, and Mr. Williams defied such instructions. *See* Dkt. 14; *see also* Dkt. 10 (indictment for charge pending in state court, wherein Mr. Williams is alleged to have intentionally choked a woman). Thus, such a removal does not run afoul of the Third CDC Moratorium, as Mr. Williams' interests as an individual previously denied residency at Ladera Apartments and status as a convicted felon are "marginally related to" and "inconsistent with the purposes implicit" in the Third CDC Moratorium. *Clarke*, 479 U.S. at 399; *see* 86 Fed. Reg. at 16,735. On these specific facts, Mr. Williams does not have prudential standing to invoke the Third CDC Moratorium's protections.

## B. SUBSTANTIAL LIKELIHOOD TO SUCCEED ON THE MERITS

As the Court has found that Mr. Williams has Article III standing but lacks prudential standing under the Third CDC Moratorium for the reasons set forth above, the Court proceeds with its preliminary injunction analysis as to all of his claims. Having reviewed the applicable authorities, the Court finds Mr. Williams has not shown a likelihood of success on the merits of any of his claims, which precludes his entitlement to a preliminary injunction. *See Barton*, 613 F. App'x at 427.

To establish a substantial likelihood of success on the merits, a plaintiff "is not required to prove [his] entitlement to summary judgment." *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011) (quoting *Byrum v. Landreth*, 566 F.3d 442, 466 (5th Cir. 2009)); *see also* 11A CHARLES ALAN WRIGHT, ARTHUR A. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3 (3d ed. 1999) (April 14, 2021 update) ("All courts agree that plaintiff must present a *prima facie* case but need not show a certainty of winning."). "[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as

to make them a fair ground for litigation and thus for more deliberate investigation." *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011) (alteration original) (citation omitted). Here, Mr. Williams has not made a *prima facie* case for any of his claims, or otherwise provided evidence that raises serious, substantial questions as to the merits.

### 1.  The CARES Act

Because the CARES Act's eviction moratorium lapsed on July 27, 2020, Mr. Williams cannot invoke its protections and seek eviction-related relief under the Act. *See* Pub. L. No. 116-136, § 4024, 134 Stat. 281, 492–93. A preliminary injunction is denied as to this cause of action.

### 2.  Third CDC Moratorium

Assuming the Third CDC Moratorium is a valid agency order under the United States Constitution, the PHSA, and 42 C.F.R. § 70.2, [6] Mr. Williams cannot establish he has prudential standing to bring suit under the agency order. *See supra* Section IV.A.2. Without prudential standing, Mr. Williams is not substantially likely to succeed on this claim. *See, e.g.*, *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 748–49 (7th Cir. 2007) (denying preliminary injunction because party lacked prudential standing); *Morris v. Pablos*, No. 3:17-cv-3387-L, 2017 WL 6381743, at

---

[6] The Court notes that the First, Second, and Third CDC Moratorium's constitutional, statutory, and regulatory validity has been fervently litigated in federal court, with the Sixth Circuit holding the Second CDC Moratorium exceeds its statutory authority, two cases pending in the Fifth Circuit, and one case pending in the Eleventh Circuit. *See Brown v. Azar*, — F. Supp. 3d —, No. 1:20-cv-3702, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020), *appeal docketed*, No. 20-14210 (11th Cir. Nov. 9, 2020); *Chambless Enters., LLC v. Redfield*, — F. Supp. 3d —, No. 3:20-cv-1455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020), *appeal docketed*, No. 21-30037 (5th Cir. Jan. 22, 2021); *Terkel v. CDC*, — F. Supp. 3d —, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021), *appeal docketed*, No. 21-40137 (5th Cir. Mar. 3, 2021); *Skyworks, Ltd. v. CDC*, — F. Supp. 3d —, No. 5:20-cv-2407, 2021 WL 911720 (N.D. Ohio Mar. 10, 2021); *Tiger Lily, LLC v. U.S. Dep't of Housing & Urban Dev.*, — F. Supp. 3d —, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021), *aff'd*, 992 F.3d 518 (6th Cir. Mar. 29, 2021).

Furthermore, the Court is aware of at least two other federal courts that are currently considering the validity of the Second CDC Moratorium, though no opinion has been rendered to date. *See Mossman v. CDC*, No. 1:21-cv-28, Dkt. 1 (N.D. Iowa Mar. 18, 2021) (original complaint in class action suit); *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 1:20-cv-3377, Dkt. 26 (D.D.C. Dec. 21, 2020) (pending motion for summary judgment).

*2–3 (N.D. Tex. Dec. 14, 2017) (same), *order vacated on other grounds*, 2017 WL 9565393 (N.D. Tex. Dec. 14, 2017).

### 3. First Amendment

To succeed on a First Amendment retaliation claim, a plaintiff must show: (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). However, before a court even considers these elements, the plaintiff must show the defendant's challenged conduct constitutes state action, rather than private action. *See Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982); *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 312 (5th Cir. 2011). "State action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (cleaned up) (italics original).

Here, Mr. Williams has not alleged, let alone provided evidence, that Defendants are state actors. Nor has Mr. Williams shown these Defendants are private actors whose actions are fairly attributable to the state. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *see also Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–97 (2001) (providing examples). Thus, Mr. Williams has not established a substantial likelihood of succeeding on his First Amendment retaliation claim. *Cf.*

*DeSouza v. Park West Apartments, Inc.*, No. 3:15-cv-1668, 2018 WL 2990099, at *15–16 (D. Conn. June 4, 2018) (granting summary judgment where the plaintiff could not show allegedly retaliatory eviction from private actor was fairly attributable to a state actor).

### 4.   Equal Protection under the Fourteenth Amendment

Likewise, Mr. Williams has not shown a substantial likelihood of succeeding on his equal protection claim. "The Equal Protection Clause directs that persons similarly situated should be treated alike." *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a claim under the Equal Protection Clause, a plaintiff "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Id.* (citing *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)). "[P]urely private conduct, no matter how discriminatory or wrongful," falls outside of the Equal Protection Clause's scope. *See Martinez-Bey v. Bank of Am., NA*, No. 3:21-cv-4986-G (BH), 2013 WL 3054000, at *2 (N.D. Tex. June 18, 2013) (citing *Lugar*, 457 U.S. at 937). Because Mr. Williams has not established Defendants are state actors, the Court denies entering a preliminary injunction as to this claim. *Cf. Martinez-Bey*, 2013 WL 3054000, at *2 (dismissing claim where the plaintiff did not allege the defendants seeking eviction were state actors).

### 5.   Americans with Disabilities Act

Nor has Mr. Williams shown he is substantially likely to succeed on his ADA claim. In his Emergency Motion, Mr. Williams does not specify which provision of the ADA Defendants allegedly violated. *See* Dkt. 6. However, because Defendants are not Mr. Williams' employer under Title I, a public entity under Title II, a telecommunications entity under Title IV, or a relevant actor under Title V's provisions for miscellaneous circumstances, the Court evaluates Mr.

23

Williams' claims under Title III, which concerns public accommodations. *See* 42 U.S.C. §§ 12112 *et seq.*; 47 U.S.C. §§ 225, 611.[7]

Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). "Although the statute prohibits application of its provisions to private residences, the term 'public accommodations' is to be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *Felknor v. Tallow Wood Apartments*, No. 08-1092, 2009 WL 3230607, at *2 (W.D. La. Sept. 28, 2009). However, though courts are to liberally interpret the ADA, federal district courts have repeatedly found apartment complexes are not places of public accommodation. *See id.* (collecting cases); *Kizzee v. Yale Village Apartments*, No. 4:09-cv-3268, 2010 WL 11652033, at *4 (S.D. Tex. Sept. 29, 2010). Because Mr. Williams' eviction from Ladera Apartments falls outside the ADA's purview, the Court finds Mr. Williams cannot show a likelihood of success on this claim.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds Mr. Williams' Emergency Motion (Dkt. 6) is hereby **DENIED** with respect to his prayer for a preliminary injunction. Mr. Williams has not established he is substantially likely to succeed on the merits of his CARES Act, Third CDC Moratorium, First Amendment, Fourteenth Amendment, or ADA claims.

---

[7] Because Title IV of the ADA amends the Communications Act, *see* 47 U.S.C. §§ 225, 661, it is not codified in the United States Code at Title 42 with other ADA provisions. *See Coghlan v. H.J. Heinz Co.*, 851 F. Supp. 808, 811 n.3 (N.D. Tex. 1994).

**IT IS THEREFORE ORDERED** that the TRO entered in Docket No. 26 is hereby **DISSOLVED**.

**So ORDERED and SIGNED this 29th day of April, 2021.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE